No. 69,722

STATE OF KANSAS, *Appellee,* v. HOWARD S. BORDERS, *Appellant.*
(879 P.2d 620)

Opinion filed August 17, 1994.

*Debra J. Wilson,* assistant appellate defender, argued the cause, and *M. Kristine Paredes,* assistant appellate defender, and *Steven R. Zinn,* deputy appellate defender, were on the brief for appellant.

*David B. Debenham,* assistant district attorney, argued the cause, and *Joan M. Hamilton,* district attorney, and *Robert T. Stephan,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, C.J.: Howard S. Borders pled guilty, pursuant to a plea bargain, to three counts of first-degree felony murder, K.S.A. 1992 Supp. 21-3401(a)(1), and pled no contest to three counts of attempted rape, K.S.A. 1992 Supp. 21-3301 and K.S.A. 21-3502. The defendant now appeals, asserting that the sentencing procedures of the district court compromised his due process rights. We affirm.

The gruesome details of the heinous crimes committed by the defendant need not be set forth in detail to address the issues on appeal. Suffice it to say, on November 23, 1991, the defendant broke into the residence of his estranged girlfriend, repeatedly stabbed her and her two small daughters, ages five and three, brutally sexually molested all three by inserting foreign objects into their vaginas, and then set the house on fire. When police and firemen arrived, all three victims were dead. A third child, an eight-month-old boy, was found unconscious but was resuscitated and was otherwise unharmed.

On January 28, 1992, pursuant to the terms of a plea bargain, the defendant pled guilty to three counts of first-degree felony murder and pled no contest to three counts of attempted rape

in exchange for the dismissal of three counts of rape, one count of aggravated burglary, and one count of aggravated arson. At the plea hearing the court set the sentencing for 2:30 p.m. on February 27, 1992, and ordered a presentence investigation (PSI). At approximately 10:30 a.m. on February 27, 1992, the defendant was sentenced to three consecutive life sentences for the first-degree felony murder charges and 5 to 20 years for each of the three attempted rape charges, with the latter sentences to run concurrent to each other but consecutive to the three life sentences. On December 9, 1992, the district court denied the defendant's motion to modify sentence. On December 14, 1992, the defendant filed a timely notice of appeal. Additional facts relating to the procedure at sentencing will be set forth as needed in considering the issues on appeal.

The defendant's issues on appeal read:

"Issue I: Mr. Borders' due process rights were violated when the Court moved his sentencing to the morning without sufficient notice to enable counsel to recontact Mr. Borders' family and inform them of the new time, and alternatively, the court refused to grant a continuance, which deprived Mr. Borders of the opportunity to present testimony by his family in mitigation of his sentence.

"Issue II: The sentencing procedure denied Mr. Borders the opportunity to be fairly sentenced with appropriate consideration by the district court of an accurate presentence investigation report in violation of due process."

No issue is raised concerning the guilt of the defendant, and he concedes that portion of the sentence which imposed three consecutive life sentences on the three counts of first-degree murder is appropriate. Nor does he take issue with the three concurrent sentences for the three counts of attempted rape. His only objection to the actual sentences imposed appears to be that he was hoping the sentences on the attempted rape charges would run concurrent with the three consecutive life sentences imposed on the murder charges.

The defendant's first issue on appeal is based upon the time of sentencing at 10:30 a.m. on February 27, 1992, rather than at 2:30 p.m. as originally scheduled. Under his initial argument, the defendant maintains that the sentencing judge failed to provide sufficient notice of the rescheduled sentencing hearing. Specifi-

cally, the defendant argues the lack of notice resulted in his inability to notify his family, thus precluding the introduction of their testimony as evidence in mitigation of punishment. The circumstances surrounding the rescheduling of the time for sentencing are not clear from the record. The appearance docket included in the district court file reflects that on February 19, 1992, an order or notice was filed with the clerk of the district court setting the time for sentencing at 10:30 a.m. on February 27, 1992. However, defense counsel apparently failed to receive notice until shortly before the time of hearing. At the time the case was called, defendant sought a continuance, and the following colloquy transpired between defense counsel and the sentencing judge:

"MR. WURTZ: May it please the Court, I respectfully move this Court to continue the sentencing of this case for the following reasons: The first being is that the Court's notice to me and my client was this sentencing was set at 2:00 o'clock this afternoon or 2:30 this afternoon. I only found out this morning that it had been changed to 10:30. As a consequence, Mr. Borders' family has not been notified of this hearing and is unable to be present.

"But your Honor, that is not the main reason that I request a hearing—a continuance on this. The main reason which I request—for which I request a continuance is that after reading the presentence report, it has been made to appear that Mr. Borders refused or failed to cooperate with the presentence investigation process. That is not the case. . . .

. . . .

"THE COURT: . . . [W]ith regard to the notice, I would have to agree with Mr. Wurtz that no formal notice was given, but it was the Court's understanding that all parties were advised that this would be in the morning by reason of the Court's schedule this afternoon and also by reason of the fact of wanting to give this case sufficient time and attention, which I would not have been able to do this afternoon in light of my other commitments.

"So I believe the, the Defendant and his counsel have had substantial notice at least that this would be, would be held this morning, so I'm going to deny the request for—request for a postponement."

Defendant's argument in support of his first issue on appeal is two-pronged: First, he contends that the trial court abused its discretion in failing to grant a continuance of the sentencing hearing and, second, he contends that the change in scheduling the sentencing hearing, without sufficient notice, deprived him of his

right to present evidence, in violation of K.S.A. 1992 Supp. 22-3424(4)(c). In relevant part the statute provides:

"(4) Before imposing sentence the court shall: . . . . (c) address the defendant personally and ask the defendant if the defendant wishes to make a statement on the defendant's own behalf *and to present any evidence in mitigation of punishment. . . .*" (Emphasis added.)

The State argues that the burden is on the defendant to demonstrate that the sentencing judge's refusal to grant a continuance was an abuse of discretion and resulted in prejudice to the defendant. Here, the State maintains that the defendant has failed to establish how he was prejudiced by the court's ruling. Specifically, the State contends that both the defendant's failure to present proffered evidence of expected family testimony and his failure to make a personal statement in mitigation of punishment illustrate the defendant's failure to meet his burden on this question. Additionally, the State notes that while the defendant filed a subsequent motion to modify sentence, the defendant failed to assert any additional evidence in mitigation of his sentence.

The record states that the sentencing judge rescheduled the hearing in order to give the "case sufficient time and attention." In *Logan v. McPhail,* 208 Kan. 770, Syl. ¶ 1, 494 P.2d 1191 (1972), we held: "A trial court must be afforded considerable latitude in controlling its docket to the end that procrastination and delay be avoided and the orderly process of its business be expedited."

"In a criminal case, the granting or denial of a continuance rests in the sound discretion of the trial court. The ruling of the trial court will not be disturbed on appeal absent a showing of an abuse of discretion and a showing of prejudice to the substantial rights of the defendant. Discretion is abused only where no reasonable person would take the view adopted by the trial court." *State v. Snodgrass,* 252 Kan. 253, Syl. ¶ 5, 843 P.2d 720 (1992).

While our research has not disclosed any case in which we have reviewed the matter of the granting or denial of a motion for a continuance in a post-trial setting such as this, we deem it sufficient to state that a defendant has no greater rights to a post-trial motion for a continuance than would be afforded before trial or during trial. Numerous courts have so held. See *People v. Bol-*

*ton,* 859 P.2d 311 (Colo. App. 1993); *Rose v. State,* 461 So. 2d 84 (Fla. 1984); *People v. Peeples,* 155 Ill. 2d 422, 616 N.E.2d 294 (1993); *State v. Walton,* 440 So. 2d 850 (La. App. 1983); *State v. Oakes,* 113 N.C. App. 332, 438 S.E.2d 477 (1994); *State v. Lewchuk,* 232 Neb. 229, 440 N.W.2d 229 (Neb. 1989); *State v. Woldegiorgis,* 53 Wash. App. 92, 765 P.2d 920 (1988).

The defendant, in his principal argument relating to the failure to grant a continuance, asserts that such failure denied him the opportunity to notify his family and thus precluded him from presenting evidence in mitigation of punishment as provided in K.S.A. 1992 Supp. 22-3424(4)(c). Following statements and arguments of counsel, the court addressed the defendant as follows:

"Thank you, Mr. Wurtz. Okay, Mr. Borders, you now have an opportunity to address the Court in the way of whatever, whatever you wish to say, in the way of what the Court sentence might or should be. And this is not a—this is not a formality. This is a significant right that the Court [*sic*] has and the Court does protect. And if you wish to address the Court, you may. Obviously you don't have to if you don't want to, Mr. Borders."

The defendant declined to make any statement and instead indicated his desire to stand on what defense counsel had already told the court. Although the defendant phrases his first issue on appeal as a denial of due process because the change in the scheduled hearing time denied him the opportunity to present his evidence, consisting of family testimony, his argument is inextricably combined with a claim that his rights under K.S.A. 1992 Supp. 22-3424(4)(c) were violated. Thus, it is necessary that we not only consider whether the denial of a continuance was an abuse of discretion but also whether the court failed to comply with the statute.

K.S.A. 1992 Supp. 22-3424(4)(c) clearly requires the court to address the defendant personally and "ask the defendant if the defendant wishes to make a statement on the defendant's own behalf and to present any evidence in mitigation of punishment." The defendant does not allege that he was not granted the opportunity to make a statement, and obviously he was given the chance to do so.

K.S.A. 22-3422 and K.S.A. 1992 Supp. 22-3424(4) provide the defendant with what has been historically known as "allocution."

In *State v. Webb*, 242 Kan. 519, 748 P.2d 875 (1988), this court traced the historical background of the right of a criminal defendant to allocution. We held:

"K.S.A. 22-3424(4) establishes the right of a defendant to allocution, which right is not waived by the defendant's silence or by argument of counsel. The right to allocution is waived, however, when a defendant fails to raise the issue of denial of allocution in a motion to modify sentence." 242 Kan. 519, Syl. ¶ 1.

In *Webb*, the trial court did not address the defendant directly and all responses were made solely by counsel. However, this court held that the issue of denial of allocution was waived when it was not raised in the motion for modification of sentence.

Several cases involving issues of allocution have been addressed by the appellate courts since *Webb*. In *State v. Heide*, 249 Kan. 723, 822 P.2d 59 (1991), the defendant pled guilty to a number of serious felonies. At the time of sentencing, the trial court "addressed Heide and asked if he had any legal reason why judgment, order, and sentence should not be imposed. Heide responded in the negative," and the court then proceeded to impose sentence. 249 Kan. at 726. Following the imposition of sentence the court again addressed Heide and asked if he had any comments. Heide then made a lengthy statement. On appeal Heide argued that the trial court violated his absolute statutory right to make a statement on his own behalf and to present evidence in mitigation of punishment *before imposition of sentence*. There was no indication in *Heide* that the defendant filed a motion for reconsideration, so the *Webb* waiver rule was not applicable. In agreeing that the defendant was entitled to be resentenced, this court stated:

"We must decide whether the trial court's inquiry of Heide as to whether there was any legal reason why sentence should not be imposed satisfied Heide's K.S.A. 22-3424(4) right to make a statement in his own behalf and to present any evidence in mitigation of punishment. There are no Kansas cases directly addressing the issue.

. . . .

"*Before imposing sentence*, K.S.A. 22-3424(4) unambiguously requires the court to address the defendant personally and ask if the defendant wishes to make a statement and present evidence in mitigation of punishment. K.S.A. 22-3424(4) is an additional requirement to K.S.A. 22-3422, the traditional allocution

statute. Satisfying K.S.A. 22-3422 does not satisfy the requirements of K.S.A. 22-3424(4).

. . . .

"We hold that K.S.A. 22-3424(4) must be followed before sentence is imposed. Sentence is imposed under K.S.A. 22-3424(4) when pronounced by the trial judge." 249 Kan. at 729-31. (Emphasis added.)

We vacated Heide's sentence and remanded the case for re-sentencing on the basis that the inquiry required by 22-3424(4) must be made prior to sentencing.

In *State v. Spencer*, 252 Kan. 186, 843 P.2d 236 (1992), the defendant was sentenced to life imprisonment following a plea of guilty to first-degree murder. Following his plea of guilty, Spencer asked for immediate sentencing. The court had been provided with a previous PSI report and proceeded to comply with the defendant's request. The trial court then addressed Spencer as follows:

"THE COURT: Mr. Spencer, before I proceed to sentencing, are there any comments that you want to make to the Court?

"THE DEFENDANT: No.

"THE COURT: Very well. Is there any reason why the Court cannot now impose sentence?

"MR. WURTZ [Defense counsel]: We know of none.

"MR. HENDERSHOT [Prosecutor]: I know of none, Your Honor." 252 Kan. at 187.

The court then proceeded to impose sentence. The defendant appealed, asserting he was entitled to be resentenced because he was not personally given the opportunity to offer evidence in mitigation of his punishment. On appeal this court found that the court's inquiry of Spencer violated K.S.A. 22-3424(4) by failing to afford the defendant his statutory right to offer evidence in mitigation of punishment. However, the court found the error to be harmless as the statute required the imposition of a life sentence and the court had considered and rejected probation, the only alternative available. We held:

"Before sentence is imposed, K.S.A. 22-3424(4) unambiguously requires a court to address a defendant personally and ask if the defendant wishes to present any evidence in mitigation of punishment."

"Errors that do not affirmatively cause prejudice to the substantial rights of a complaining party do not require reversal when substantial justice has been done." 252 Kan. 186, Syl. ¶¶ 1, 2.

In *State v. Bafford,* 255 Kan. 888, 879 P.2d 613 (1994), the trial court addressed the defendant in similar fashion as was done in this case. The judge "failed to explicitly ask Bafford if he wished to present evidence in mitigation of punishment." 255 Kan. at 891. Bafford did not file a motion to modify his sentence and we therefore held that the *Webb* waiver rule was not applicable. The State, in *Bafford,* concluded that the statute was not fully complied with and that the rule set forth in Syl. ¶ 1 of *Spencer* was applicable. No attempt was made to assert harmless error, even though *Bafford* in his brief set forth in detail factual circumstances and possible evidence which might have led the court to impose a more lenient sentence. It appears the State agreed or at least impliedly conceded that the error in *Bafford* was not harmless. *Bafford* was remanded to the district court with directions to resentence the defendant.

Following oral argument before this court, the defendant in the instant case submitted a statement of additional authorities, citing *Webb,* 242 Kan. 519, and *State v. Wielgus,* 14 Kan. App. 2d 145, 783 P.2d 1320 (1989), in support of his argument that he had an absolute right to present evidence in mitigation of his sentencing. In *Wielgus,* the trial court apparently refused to allow the defendant to make a statement at allocution, in clear violation of 22-3424(4). The defendant filed a direct appeal and did not file a motion to modify his sentence, so there was no issue of waiver of the right to allocution as occurred in *Webb.* The court, in a two-page opinion, held the defendant had been denied his statutory right. No facts were included in the opinion, and the opinion is of little help in the case now before us.

None of the foregoing cases precisely fit the factual situation and issues now facing us. Previous cases have turned primarily on the question of strict compliance with the statute. While that is also an issue here, the State has also raised issues of waiver, lack of prejudice, harmless error, and failure of the defendant to proffer evidence in support of his position.

Here, the defendant was given full opportunity to address the court, but he declined to do so. While counsel argued that defendant had been denied the opportunity to notify his family of

the time of sentencing, there has never been any assertion that any family member desired to attend the sentencing, or that the defendant had any evidence to present. Even though the defendant was present and heard his counsel's argument about lack of opportunity to notify the family, he made no assertion of any evidence or testimony he wanted to present through his family.

K.S.A. 60-405 provides:

"A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless it appears of record that the proponent of the evidence either made known the substance of the evidence in a form and by a method approved by the judge, or indicated the substance of the expected evidence by questions indicating the desired answers."

In essence, the defendant is arguing that there was an erroneous exclusion of evidence based upon a lack of opportunity to present the alleged evidence. He further claims an absolute right to that opportunity based upon K.S.A. 1992 Supp. 22-3424(4). Where the defendant's argument breaks down, however, is that there was not, and has not been to this date, any indication that there was any evidence to present. Even when addressed directly by the court and given the opportunity to assert anything pertaining to "what the Court sentence might or should be," the defendant failed to indicate that he had any evidence that he desired to present. Absent some proffer that the defendant had evidence to present in mitigation of the sentence, we fail to find any reversible error. The mere fact that the defendant's family could not be notified in time to be present would not be grounds for relief absent some showing the family had evidence to present. The statute provides that the court may allow the victim or the victim's family to address the court but makes no such provision for the defendant's family.

Considering that the Topeka Correctional Facility (TCF) report reveals that the defendant referred to his mother as a "Royal pain in the ass" and as a "Royal fucking bitch," the failure to actually claim that his family had any mitigating evidence or testimony to present is understandable.

The State also argues that there has been no showing of any prejudice to the defendant by the denial of a continuance or by

the alleged noncompliance with the allocution statute. K.S.A. 60-261 provides:

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

While it has long been recognized that alleged trial errors will not be grounds for reversal absent a showing of prejudice to the substantial rights of the defendant, we have not specifically addressed the issue of the need to show prejudice when it is claimed that a defendant's rights to allocution have been violated. In *Webb*, we recognized that "[m]any jurisdictions have held that noncompliance with a mandatory statute is, of course, error but, unless prejudice to the defendant is shown, not reversible error." 242 Kan. at 525. However, we went on to further discuss the history of allocution and made no specific determination of the necessity to show prejudice. *Webb* was finally determined on the basis of waiver for failure to assert the alleged violation of the statute in the motion for modification. Here, the issue of lack of prejudice has been asserted by the State. We believe the requirement of a showing of prejudice to the substantial rights of the defendant is equally applicable to alleged violations of the allocution statute as it is to the many other areas of criminal procedure where prejudice must be shown to justify a reversal. The defendant here has shown absolutely no prejudice, and while failure to comply with a mandatory statute, such as K.S.A. 1992 Supp. 22-3424(4), is error, but not reversible error unless prejudice to the substantial rights of the defendant is shown.

In *Webb*, we held that failure to raise the issue of a failure to provide full allocution in a motion to modify sentence constituted a waiver of any objection to the allocution. The rule of waiver set forth in *Webb* was subsequently limited in *Spencer* to cases where an actual hearing on a motion to modify was held. We

conclude our statements in *Spencer* were overly broad. Here, the defendant's motion to modify his sentence reads:

"COMES NOW the defendant, by and through Ronald E. Wurtz, District Defender, and moves the Court to modify his sentence pursuant to K.S.A. 21-4603. The defendant further moves the Court to return him to the Shawnee County Jail for the purpose of a sentence modification hearing.

"Defendant bases his Motion on the report from the State Reception and Diagnostic Center. The one hundred twenty (120) day time period expires on June 27, 1992."

The motion contained no facts, assertions, or claims that the defendant's right to allocution had been denied or violated. The sole basis for modification was defendant's reliance on the TCF report. The report recommended that the defendant serve an appropriate sentence and then stated:

"Regardless of one's understanding of this inmate's behavior in the instant offenses, it becomes very clear he is a violent, sadistic and hostile predator on the weaknesses of others, and his presence is a grave threat and danger to others near him, whether in a free society, or while incarcerated and in a prison population. If he is ever even considered for placement outside of a maximum security setting, he should be thoroughly re-evaluated. We would strongly caution against such consideration."

The TCF report certainly contained no support for a modification of sentence.

Whether a defendant is entitled to a hearing on a motion to modify sentence is discretionary with the trial court based upon the record before the court at the time. *State v. Pierce*, 246 Kan. 183, Syl. ¶ 1, 787 P.2d 1189 (1990). While it is true the court ruled on the motion to modify sentence without a hearing, the defendant has the duty to set forth in such a motion sufficient allegations and facts that would justify a hearing. When the motion for modification is based upon assertions that the defendant was denied statutory rights to allocution, allegations to that effect must be set forth with particularity in the motion. Absent any such allegations in the pleading or motion, the defendant waives any issue as to the sufficiency of the allocution or compliance with K.S.A. 1992 Supp. 22-3424(4). The waiver rule recognized in *Webb* applies not only where there is an actual hearing but also when the court properly exercises its discretion and rules

without a hearing based upon the record before it. Implications to the contrary in *Spencer* are disapproved.

For all of the foregoing reasons, we find no merit in the defendant's arguments relating to the failure to grant a continuance and that such failure violated his rights to allocution under K.S.A. 1992 Supp. 22-3424(4)(c) by precluding him from presenting evidence in mitigation of punishment. The defendant was not denied his due process rights and substantial justice has been done. K.S.A. 60-261.

The defendant's next issue on appeal is that he was denied the opportunity to be fairly sentenced because of an inaccurate PSI report. The facts, as disclosed by the sparse record before us, indicate that the court services officer assigned to do the PSI attempted to interview the defendant at the Shawnee County Jail on February 11, 1992. At that time, the defendant refused to cooperate. He refused to give the court services officer any information and refused all discussion, stating: "I ain't going to tell you nothing man. I told you all I'm going to tell you already." The interview was then terminated at the defendant's request. Subsequently, there was an attempt to proceed with a second interview, but due to a change in administrative procedure it was never accomplished. Thus, the PSI report submitted to the court did not include anything of substance from the defendant and, in addition, indicated that the attempts to conduct an interview were thwarted by the defendant's refusal to cooperate at the first interview and that the second proposed interview was canceled at defense counsel's request.

In addition, the defendant complains of the failure of the report to indicate that the original counts of aggravated burglary and aggravated arson had been dismissed as part of the plea bargain. However, a complete reading of the report clearly indicates this failure was due to clerical errors and that the two dismissed counts were not considered or relied upon by the court services officer in making his report. The final recommendation was that the defendant be sentenced for an appropriate period of time and "[b]ecause these are actually *six* separate violent acts, I recommend the Court run the sentences consecutive to each other." (Emphasis added.)

At the time of sentencing, the State as well as the defense pointed out the errors in the PSI report, and defense counsel and the defendant were clearly given a full opportunity to explain and comment upon the discrepancies. In doing so, the record reflects the following took place:

"MR. WURTZ: . . . The main reason which I request—for which I request a continuance is that after reading the presentence report, it has been made to appear that Mr. Borders refused or failed to cooperate with the presentence investigation process. That is not the case. And the presentence writer, Mr. McMillan, I think, will testify to that.

"In the report, it indicates that a second interview was scheduled. That second interview, then, the way the report reads, was aborted after a conversation between the probation officer, Mr. McMillan, and myself wherein it appears that I said that we don't have time to do it, so just write your report, or words to that effect.

"There's a great deal more to it than that. And, in fact, Mr. McMillan, and I believe in his first report, first drafted a report, explained it adequately as to what occurred but his supervisors ordered him to take it out. And that puts Mr. Borders in a bad light. It likewise puts me in a bad light. And in effect, Your Honor, it denies Mr. Borders the opportunity to a full and complete presentence investigation.

"I just finished talking with Mr. McMillan. That is the reason that I am late to court. And I apologize for that. And he is on his way up to court, which I would like to put that on the record to correct it, unless the Court is willing, based upon my statement at this time, to continue the sentencing of this case so Mr. Borders may have a fair hearing.

"THE COURT: Okay. Mr. Ossmann, do you have any comments?

"MR. OSSMANN: Well, Judge, I think that the Defendant has a right at this hearing to allocution, which is to address the Court and tell the Court whatever he has to say in mitigation of punishment. And I think that the presentence report generally is another opportunity for a Defendant to explain his actions.

"With regard to the presentence report and that portion of the report that deals with the second attempt to interview the Defendant, it's my recollection that the Division 1, the Administrative Judge, passed a new administrative order that prohibited Court Services people from face-to-face contact with prisoners at the jail and that they were going to be required to conduct those interviews by way of the television look-out that we have with the jail. The Court Services people hadn't been sufficiently briefed on how that worked, so that that wasn't a possibility, and that there was some suggestion that Mr. Wurtz then make arrangements to have that interview take place. We have no reason to doubt Mr. Wurtz's recitation of what happened, but think that allocution at this time would be sufficient to advise the Court of whatever mitigating facts and circumstances the Defendant would present.

"THE COURT: Okay.

"MR. OSSMANN: Judge, I—I'd indicate as well in summary of the presentence report it indicates that Defendant was convicted of three counts of first degree murder, one count of aggravated burglary, one count of aggravated arson, and three counts of attempted rape. And as the Court's already noted, that should be corrected to simply show three counts of first degree murder and three counts of attempted rape.

"THE COURT: Okay, Well, I think that certainly better procedure probably would have been that the Defendant be interviewed. I believe that he did have— he did have at least one opportunity to be interviewed and chose not to participate in that. I believe that I'll take Mr. Borders' and Mr. Wurtz's word for it that they did want to cooperate with the—with the interview process. And I'm not going to hold it against—hold any comments in the presentence report against Mr. Borders that he was uncooperative. I'll just consider that not—to not have happened and not to have been a part of this process.

"And I agree with Mr. Ossmann that the Defendant certainly at this time will have an opportunity to be heard in a full and comprehensive manner and our recent cases protect that right to a significant extent. So I believe that that would cure any defect in the, in the report.

. . . .

"MR. WURTZ: Well, I have an additional concern. Mr. McMillan's just come in the courtroom. I think he heard most of Mr. Ossmann's statement. I have a concern that there's now something in the record that I have done something to obstruct this process. And as long as the Court is agreeing in substance to correct the presentence report to the point that I did not obstruct this process and that I tried and I believe Mr. McMillan tried but was substantially hindered by new court orders and supervisory rules from conducting this report, and I think that that deprives Mr. Borders of a significant right, and that's why I'm objecting to proceeding at this time.

"THE COURT: Well, . . . (Pause)

"MR. WURTZ: If the Court ruling stands, we're ready to proceed.

"THE COURT: Well, I don't agree. I think that all protections that have been necessary have been provided. And I certainly don't hold it that Mr.—Mr. Wurtz or Mr. McMillan intentionally tried to obfuscate or obstruct the procedures. I think it was just a matter of circumstances and timing. So I'll let the record stand in that regard and we'll go ahead and proceed."

The court was fully aware of the discrepancies in the PSI report and the defendant's concern about them. The court also made it clear that the discrepancies in the report and the failure of the second attempt to interview the defendant would not be held against him and in fact were considered by the court not to have occurred.

K.S.A. 1992 Supp. 21-4604 states in pertinent part:

"Whenever a defendant is convicted of a felony, the court shall require that a presentence investigation be conducted by a court services officer or in accordance with K.S.A. 21-4603, and amendments thereto, unless the court finds that adequate and current information is available in a previous presentence investigation report or from other sources."

In considering the sufficiency of a PSI report certain rules have been recognized. "Presentence reports are valuable tools and should be given close attention by sentencing judges to the end that offenders may receive fair sentences based on the best available information rather than on inadequate guesswork." *State v. James*, 223 Kan. 107, Syl. ¶ 5, 574 P.2d 181 (1977).

"The United States Supreme Court has held that a sentence predicated on false information denies the defendant due process of law, *Townsend v. Burke*, 334 U.S. 736, 740-41, 92 L. Ed. 1690, 68 S. Ct. 1252 (1948), and a sentence so rendered requires vacation and remand for resentencing. *United States v. Tucker*, 404 U.S. 443, 447, 30 L. Ed. 2d 592, 92 S. Ct. 589 (1972). To meet due process requirements, the sentencing procedure must afford a defendant the opportunity to deny or explain information considered in determining the appropriate sentence. *Gardner v. Florida*, 430 U.S. 349, 362, 51 L. Ed. 2d 393, 97 S. Ct. 1197 (1977); *Williams v. New York*, 337 U.S. 241, 93 L. Ed. 1337, 69 S. Ct. 1079 (1949)." *State v. Grantom*, 229 Kan. 517, 518-19, 625 P.2d 499 (1981).

"Defendant bears the burden of proving that his right to due process was violated because his sentence resulted from inaccurate information." *State v. Brewer*, 11 Kan. App. 2d 655, 664, 732 P.2d 780, *rev. denied* 241 Kan. 839 (1987).

The defendant's principal complaint on appeal is that his PSI report contained inaccurate information and that the sentencing judge *may have* relied upon that information in violation of the defendant's due process rights. Additionally, the defendant argues that he was deprived of a significant right by not being afforded an interview in conjunction with the PSI.

It is important to note that the initial interview failed due to the defendant's refusal to cooperate and answer questions. While the PSI report seems to indicate that the second failed interview was also due to the defendant's lack of cooperation, the record demonstrates that the defendant was given the opportunity to

challenge and rebut the information provided in the report. The defendant's counsel stated that the second interview was aborted due to administrative complications unrelated to the defendant. The State agreed, and the court was fully advised of the fact that the aborted second interview was not as a result of any action or inaction by the defendant or his trial counsel. The court recognized and adopted that position.

The defendant's second allegation of inaccuracy emanated from portions of the PSI report which incorrectly listed two charges against the defendant which had previously been dismissed pursuant to the plea bargain. Here, the defendant contends that the PSI report recommendation resulted in part from the consideration of the aggravated burglary and aggravated arson charges which were dismissed. As previously stated, the court services officer made his recommendation based solely on the six crimes to which the defendant pled either guilty or nolo contendere.

The defendant's final argument maintains that his lack of participation in the PSI denied him a significant right and was violative of his due process rights. We disagree. The sentencing judge determined that any error caused by the lack of the defendant's participation was cured by his statutory right to allocution. The defendant was given the opportunity of an interview and declined. The defendant cannot refuse to participate in the PSI interview process and then use the failure of an interview as a ground for appeal. We know of no rule of law that requires the court services officer to continue making attempts at a personal interview with the defendant after the defendant has refused the opportunity and refused to cooperate.

The defendant's due process rights were fully protected by the trial judge in this case, and the defendant has shown no prejudice. We find no abuse of discretion by the trial court in any of the issues asserted on appeal.

The judgment is affirmed.