(70 P.3d 1226)

No. 88,924

STATE OF KANSAS, *Appellee,* v. TADISHA YONG SPENCER, *Appellant.*

Opinion filed June 20, 2003.

*Steven R. Zinn,* deputy appellate defender, for appellant.

*Steven J. Obermeier,* assistant district attorney, *Paul J. Morrison,* district attorney, and *Phill Kline,* attorney general, for appellee.

Before RULON, C.J., KNUDSON, J., and LARSON, S.J.

LARSON, J.: We determine in this appeal if Tadisha Yong Spencer's constitutional rights were violated when her invoking of her Fifth Amendment rights in the preparation of the risk needs assessment of the presentencing investigation (PSI) report resulted in her being placed on probation with community corrections rather than probation with court services.

We find no constitutional violation and affirm the trial court.

Spencer was charged with one count of criminal use of a financial card in September 2001. As the result of plea negotiations, the charge was reduced to attempted criminal use of a financial card, a severity level 10 felony. The parties agreed to recommend the low grid box imprisonment term and probation with court services. The court accepted the plea and found Spencer guilty.

Spencer's criminal history score was "H," and an offense severity level of 10 was presumptive probation, with an underlying sentencing range of 5-6-7 months. At the sentencing, the court imposed a 5-month sentence but noted Spencer had made no statement in the PSI report and had declined to participate in the required risk needs assessment by invoking her rights under the Fifth Amendment to the United States Constitution.

The court stated:

"Well, when the defendant declines to participate with the risk needs assessment, thereby putting us in a position where we don't have a valid risk needs assessment that can be completed the court scores that high . . . ."

". . . She has the right to decline the information. . . . We're not going to score lower by default. That results in a low risk needs assessment score by every defendant that comes before the Court, unless the criminal history score is-- independently, automatically would create a high score."

". . . Under these circumstances, she has to be scored high because otherwise the whole risk needs process loses even the last shred of credibility and liability."

The court placed Spencer on probation with community corrections intensive supervision, stating that if she did well she could be transferred to standard probation.

Spencer appeals, contending the trial court erred in placing her on community corrections probation instead of court services probation because it used her exercise of her Fifth Amendment priv-

ilege against self-incrimination during the PSI preparation process as a basis for its actions.

The State counters by arguing Spencer may not complain about the conditions of her probation, the appellate court has no jurisdiction to review a presumptive sentence, and the United States Supreme Court case relied on by Spencer, *Mitchell v. United States*, 526 U.S. 314, 143 L. Ed. 2d 424, 119 S. Ct. 1307 (1999), related to the length of a drug sentence, which is not in issue in our case.

It is true that we have no jurisdiction to consider an appeal from a presumptive sentence, K.S.A. 21-4721(c)(1); *State v. Flores*, 268 Kan. 657, 659, 999 P.2d 919 (2000), but the issue raised relates to a constitutional violation in determining the terms and conditions of the probation granted.

In discussing probation in *State v. Windom*, 23 Kan. App. 2d 429, 432, 932 P.2d 1019, *rev. denied* 262 Kan. 969 (1997), we said:

"Kansas courts have consistently recognized that probation is a privilege granted by the sentencing court and the court has broad power and authority in imposing conditions of probation so long as such conditions do not violate statutory law or constitute an abuse of discretion by the court. See *State v. Walbridge*, 248 Kan. 65, 68, 805 P.2d 15 (1991). The court in *State v. Starbuck*, 239 Kan. 132, 133, 715 P.2d 1291 (1986), stated: 'Probation from serving a sentence is an act of grace by the sentencing judge and is granted as a privilege, not as a matter of right. The judge, when granting probation, has broad powers to impose conditions designed to serve the accused and the community.'

"Although the imposition of the KSGA [Kansas Sentencing Guidelines Act] has curbed the district court's discretion in awarding prison or nonimprisonment sentences, if probation is granted, the district court's discretion in imposing conditions along with the probation has remained the same. See K.S.A. 21-4610(c)."

The specific language of K.S.A. 2002 Supp. 21-4610(c) authorizes the trial court to assign a defendant granted probation to a community correctional services program, as was done in this case. There is no question the trial court was within its discretion in determining the conditions to impose on Spencer for her probation.

Spencer does not counter either of the above contentions of the State but centers her appeal on the contention that her Fifth Amendment right against self-incrimination was violated because

the trial court used her silence during the PSI report preparation to grade her risk needs assessment as being high, resulting in the imposition of more stringent conditions to her probation.

Spencer's reliance on *Mitchell*, 526 U.S. 314, to compel her to be placed on court services probation is misplaced. Mitchell pled guilty to distributing cocaine but reserved the right to contest the drug quantity at sentencing. She had been informed she faced a mandatory 1-year minimum in prison for distributing cocaine but a 10-year minimum for conspiracy if the government could show she distributed over the required 5 kilograms.

At the sentencing hearing, codefendants testified to regular sales by Mitchell that exceeded the 5 kilogram threshold and another witness testified that she had sold her 2 ounces of cocaine. Mitchell put on no evidence and argued the only reliable evidence showed she had sold only 2 ounces of cocaine.

The federal district court ruled, as the result of her plea, that Mitchell had no right to remain silent about the crime's detail, found the codefendants' testimony put her over the 5 kilogram threshold thus mandating the 10-year minimum sentence, and noted Mitchell's failure to testify was a factor in persuading the court to rely on the codefendants' testimony. After being affirmed by the Third Circuit Court of Appeals, the United States Supreme Court reversed. 526 U.S. at 321.

The majority opinion first held that a guilty plea does not waive the self-incrimination privilege at sentencing because such proceedings are clearly a part of "any criminal case." 526 U.S. at 327. The opinion further held that it is not proper for a sentencing court to draw an adverse inference from a defendant's silence in determining facts relating to the circumstances and details of the crime. With the sentencing hearing being part of the criminal case, the rule against negative inferences at trial continues to apply. 526 U.S. at 317, 326-30. The Court expressed no opinion as to whether a defendant's silence bears upon the determination of a lack of remorse or an acceptance of responsibility for the crime to allow a downward adjustment of a sentence. 526 U.S. at 330.

The issue we face is not the extent of the sentence to be entered. There is a great difference between the imposition of a minimum

10-year prison sentence and the question of the trial court's statutorily granted discretion in the determination of the terms and conditions of the beginning of probation.

In our case, Spencer exercised her Fifth Amendment rights during the preparation of the PSI report, not during a sentencing hearing. The risk needs assessment was not conducted for the purpose of determining the facts, circumstances, or details of the crime charged. As the trial court pointed out in this case, if every defendant would exercise his or her Fifth Amendment rights during the PSI preparation and automatically receive the most beneficial assessment as Spencer claims, there would be no point in doing the risk needs assessment and its value to the rehabilitation process and as a tool to protect the public would be negated.

We did follow *Mitchell* in *State v. Aikman,* 29 Kan. App. 2d 1, 4, 26 P.3d 1276 (2001), where the sentencing court used the defendant's refusal to disavow affiliation with a gang in order to impose a departure sentence. We held the trial court's reliance on a negative inference from Aikman's silence was impermissible under *Mitchell.* 29 Kan. App. 2d at 4. Our situation is materially different from the *Aikman* case. There, a harsher sentence was imposed on remand, and it involved a departure sentence without factors justifying such action.

As was said in *State v. Borders,* 255 Kan. 871, 886, 879 P.2d 620 (1994): "In considering the sufficiency of a PSI report certain rules have been recognized. 'Presentence reports are valuable tools and should be given close attention by sentencing judges to the end that offenders may receive fair sentences based on the best available information rather than on inadequate guesswork.' [Citation omitted.]" Borders complained his lack of participation in the PSI process— he initially refused to cooperate and a second interview was aborted due to administrative complications—denied him of a significant right and was violative of due process. Our Supreme Court held: "The defendant cannot refuse to participate in the PSI interview process and then use the failure of an interview as a ground for appeal." 255 Kan. at 887.

In Kansas before the *Mitchell* decision, we held that "[a] person who has pleaded guilty to a crime but who has not yet been sen-

tenced is entitled to exercise the Fifth Amendment privilege against compelled testimonial self-incrimination with respect to the crime to which he has pleaded guilty." *State v. Rucas*, 12 Kan. App. 2d 68, Syl., 734 P.2d 673 (1987). The trial court recognized this right but correctly held that the exercise of such right has consequences.

When probation is the presumptive sentence, the trial court's rights and obligations under K.S.A. 2002 Supp. 21-4610(c) come into play, as do the provisions of K.S.A. 2002 Supp. 75-5291(a)(2)(E) which allows community correctional services to "any offender who is determined to be 'high risk or needs, or both' by the use of a statewide, mandatory, standardized risk assessment tool or instrument validated for community correction placements." When adequate information is not available, it is not error for the trial court to place a convicted felon in the high risk status so that the needs of such a party will be met and the highest services will be made available so that probation will most likely be successful and community protection will be achieved.

The trial court took the correct action based on the information available in commencing Spencer's probation with community correctional services under the facts and circumstances of this case.

Affirmed.