(185 P.3d 320)
No. 98,038

STATE OF KANSAS, *Appellee,* v. NICHOLAS ADAMS BENNETT, *Appellant.*

Opinion filed June 13, 2008.

*Patrick H. Dunn,* of Kansas Appellate Defender Office, for appellant.

*Daryl E. Hawkins,* assistant county attorney, and *Paul J. Morrison,* attorney general, for appellee.

Before RULON, C.J., ELLIOTT and HILL, JJ.

RULON, C.J.: Defendant Nicholas Adams Bennett appeals the imposition of a condition of his probation requiring the defendant to submit to nonconsensual, suspicionless searches performed by community corrections or law enforcement officers. We reverse and remand.

We are satisfied the parties are familiar with the underlying facts. As such, we need not revisit those facts. The sole issue on appeal is whether the condition of probation relating to searches is constitutional. The language of the journal entry is somewhat ambiguous regarding the level of suspicion needed to conduct a search, saying only that community corrections or law enforcement officers could conduct searches without probable cause or need for further court order. However, the sentencing judge's comments and ultimate order during sentencing provide that either community corrections or law enforcement officers can conduct searches at any time for potentially any reason. A sentence does not derive its effectiveness from the journal entry but rather is effective when pronounced from the bench. *Abasolo v. State,* 284 Kan. 299, 304, 160 P.3d 471 (2007).

The State raises a jurisdictional challenge to this appeal contending this court does not have jurisdiction to consider this appeal for two reasons, both pursuant to K.S.A. 21-4721(c): (1) The defendant is appealing a presumptive sentence over which this court lacks jurisdiction, and (2) the defendant is appealing his sentence that was the result of an agreement between the State and the defendant, which the sentencing court approved on the record.

The general rule is that an appellate court shall not review a sentence within the presumptive guidelines. K.S.A. 21-4721(c)(1); *State v. Flores*, 268 Kan. 657, 659, 999 P.2d 919 (2000). However, our Supreme Court has recognized that probation is separate and distinct from the sentence. A person on probation is not serving a sentence. Probation is a dispositional alternative to the serving of a sentence that does not increase or decrease the sentence required to be imposed by statute. *State v. Carr*, 274 Kan. 442, Syl. ¶ 3, 53 P.3d 843 (2002).

Further, this court has allowed an appeal from a presumptive sentence where the appeal was a challenge to an imposed condition of probation. *State v. Spencer*, 31 Kan. App. 2d 681, 683, 70 P.3d 1226, *rev. denied* 276 Kan. 973 (2003). *Spencer* is distinguishable from *State v. Lewis*, 27 Kan. App. 2d 134, 140-42, 998 P.2d 1141, *rev. denied* 269 Kan. 938 (2000), where this court declined to address on direct appeal whether a presumptive sentence amounted to cruel and unusual punishment due to the jurisdictional bar set forth in K.S.A. 21-4721(c). *Lewis* was a challenge to the presumptive sentence, not to a condition of probation. Generally, conditions of probation are not per se presumptive, and such conditions are a matter within the discretion of the sentencing court. See K.S.A. 21-4610(c); *Spencer*, 31 Kan. App. 2d at 683. We conclude we have jurisdiction.

The defendant specifically reserved his right to appeal his sentence. Here, the standard plea agreement language was: "The Defendant waives his right of appeal on all matters." However, the words "all matters" were crossed out and the words "his conviction" were written in so that the defendant waived his right of appeal on his conviction only. Furthermore, this defendant's attorney filed a written objection to the condition of probation regarding

searches and argued the issue at sentencing. Clearly, this defendant did not waive a challenge to this condition of probation.

Turning to the substantive argument, the defendant contends the condition of his probation relating to searches is unconstitutional. Clearly, setting conditions of probation is a matter over which the sentencing court has discretion. K.S.A. 21-4610(c); *Spencer*, 31 Kan. App. 2d at 683. "There are, however, limitations on probation conditions that infringe on constitutionally protected rights." *State v. Mosburg*, 13 Kan. App. 2d 257, 258, 768 P.2d 313 (1989). Whether a probation condition is constitutional raises a question of law over which an appellate court has unlimited review. *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006).

The defendant argues the search condition violates his right to be free from unreasonable searches guaranteed him by the Kansas and United States Constitutions. The Fourth Amendment to the United States Constitution reads in relevant part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." The Kansas Constitution Bill of Rights, §15 guarantees the same protections. The touchstone of the Fourth Amendment is reasonableness, and courts should evaluate the degree to which a search intrudes upon an individual's privacy and the degree to which the intrusion is necessary to further legitimate governmental interests. *United States v. Knights*, 534 U.S. 112, 118-19, 151 L. Ed. 2d 497, 122 S. Ct. 587 (2001).

Nevertheless, probationers do not enjoy the same level of freedom and Fourth Amendment protections as ordinary citizens. See *Griffin v. Wisconsin*, 483 U.S. 868, 874, 97 L. Ed. 2d 709, 107 S. Ct. 3164 (1987). However, while a probationer's expectation of privacy is generally significantly diminished by their status as probationers, there are constitutional limits on the degree to which a probationer's rights can be restricted. *Knights*, 534 U.S. at 119-21; *Mosburg*, 13 Kan. App. 2d at 258. The United States Supreme Court has set forth some of the parameters regarding the degree to which probationers' and parolees' rights can be diminished.

In *Griffin*, the Supreme Court evaluated a Wisconsin statutory scheme that allowed a probation officer to search a probationer's

home if a supervisor approved the search and there were reasonable grounds to believe contraband would be found. The Court determined that the operation by a State of its probation system presented special needs beyond those required for normal law enforcement. 438 U.S. at 873-74. The Court concluded that Wisconsin's probation regime would be unduly disrupted if probation officers were required to have probable cause before an officer could conduct a search of a probationer. 483 U.S. at 878. Thus, the *Griffin* Court upheld Wisconsin's use of a reasonable suspicion standard to justify probationer searches by their probation officers. 483 U.S. at 877-80.

In *Knights*, the Supreme Court extended its holding in *Griffin* to authorize the use of the reasonable suspicion standard by general law enforcement officers. 534 U.S. at 120-22. This time, general Fourth Amendment principles were used to justify the search rather than the special needs doctrine used to support the probation officer search in *Griffin*. *Knights*, 534 U.S. at 117-22. In examining the totality of the circumstances, the *Knights* Court noted the following: (1) The probation order clearly stated the search condition, and (2) Knights, the probationer, was unambiguously aware of the condition. The *Knights* Court determined the search condition "significantly diminished Knights' reasonable expectation of privacy." 534 U.S. at 119-20. Weighing Knights' diminished expectation of privacy against the State's interests, the Court noted probationers are more likely than ordinary citizens to break the law and, at the same time, probationers have more incentive to conceal criminal activities. 534 U.S. at 120. The *Knights* Court concluded the State's interest in apprehending criminals may focus on probationers in a way it does not on the ordinary citizen. 534 U.S. at 121.

In *Samson v. California*, 547 U.S. 843, 165 L. Ed. 2d 250, 126 S. Ct. 2193 (2006), the Supreme Court again extended the right of the government in this arena and upheld a suspicionless search of a parolee. 547 U.S. at 857. The *Samson* Court concluded parolees have even fewer expectations of privacy than do probationers because parole is more like imprisonment than probation. 547 U.S. at 850. The *Sampson* Court examined California's stringent statu-

tory and regulatory scheme regarding parolees and concluded the extent and reach of the scheme clearly demonstrated California parolees had severely diminished privacy rights. 547 U.S. at 851-52. The *Sampson* Court also characterized a California parolee as not having an expectation of privacy that society would recognize as legitimate. 547 U.S. at 852. On the other hand, the Court characterized the State's interest in supervising parolees as overwhelming and thus upheld the search provision. 547 U.S. at 853, 857.

While United States Supreme Court precedent has illuminated some of the constitutional parameters in this area, the question of whether a nonconsensual, suspicionless search of a probationer could pass constitutional muster has remained open. While *Samson* leaves open that possibility, two elements of the *Samson* case should be stressed. First, the *Samson* Court clearly indicated parolees have fewer constitutional rights than probationers. Second, the *Samson* decision was based on California law regarding parolees. With those two elements in mind, we turn to Kansas law.

Kansas courts have faced the issue of whether various conditions of probation are constitutional on many occasions. *State v. Uhlig*, 38 Kan. App. 2d 610, 615-17, 170 P.3d 894 (2007) (upholding the search of a probationer's bedroom conducted by a court services officer and supported by reasonable suspicion); *Spencer*, 31 Kan. App. 2d at 682-83 (upholding the imposition of probation supervised by community corrections rather than court services); *State v. Evans*, 14 Kan. App. 2d 591, 593, 796 P.2d 178 (1990) (determining that a condition of probation requiring attendance at a specific church was unconstitutional); *Mosburg*, 13 Kan. App. 2d at 260 (determining that a condition of probation mandating that probationer refrain from becoming pregnant was unconstitutional). The *Uhlig* court upheld the search of a probationer's bedroom conducted by a court services officer and supported by reasonable suspicion; however, the court specifically refrained from determining whether reasonable suspicion would be required in all searches of probationers. 38 Kan. App. 2d at 617. That is essentially the question posed by this appeal, which is whether it is constitutional to order a probationer be subject to search at any time for any reason by community corrections or law enforcement officers.

The *Uhlig* court discerned a continuum of constitutional rights that had been set forth by Supreme Court precedent: (1) "Prisoners have no expectation of privacy [citation omitted] and lack Fourth Amendment rights" and therefore can be searched at any time for any reason; (2) "[P]arolees have a slight expectation of privacy and therefore can be searched in the absence of reasonable suspicion, but not arbitrarily or capriciously [citation omitted]"; and (3) "[P]robationers have a higher expectation of privacy than parolees, but no standard is set forth." 38 Kan. App. 2d at 614. While no specific standard has been set forth by the United States Supreme Court or Kansas courts, the Tenth Circuit Court of Appeals has analyzed Kansas law with respect to whether suspicionless parolee searches are valid and has thus shed some light on this issue.

In *United States v. Freeman*, 479 F.3d 743 (10th Cir. 2007), the court evaluated whether a suspicionless search of a parolee's home conducted by law enforcement was constitutional in Kansas. In *Freeman*, the court explained that the Kansas Department of Corrections (KDOC) had established criteria for the search of parolees and that criteria authorized special enforcement officers (SEOs) to conduct searches of parolees when supported by reasonable suspicion that evidence of a parole violation would be found. 479 F.3d at 744. However, in Freeman's case, the court concluded the search was not justified because it was law enforcement officers who conducted the search of his residence and the search was conducted on a random basis and without reasonable suspicion. 479 F.3d at 748-50.

The *Freeman* court, in analyzing Supreme Court precedent, described the *Samson* decision in the following manner:

"The Court noted 'that some States and the Federal Government require a level of individualized suspicion,' and strongly implied that in such jurisdictions a suspicionless search would remain impermissible. [Citation omitted.] Parolee searches are therefore an example of the rare instance in which the contours of a federal constitutional right are determined, in part, by the content of state law." 479 F.3d at 747-78.

The *Freeman* court went on to state:

"*Samson* does not represent a blanket approval for warrantless parolee or probationer searches by general law enforcement officers without reasonable suspi-

cion; rather, the Court approved the constitutionality of such searches only when authorized under state law. Kansas has not gone as far as California in authorizing such searches, and this search therefore was not permissible in the absence of reasonable suspicion." 479 F.3d at 748.

In *Freeman*, the court noted the existence of the KDOC regulations which required reasonable suspicion to support an SEO search. More relevant to the issue presented here is K.S.A. 21-4610 which sets forth a nonexclusive list of acceptable conditions of probation. There is no search condition contained in that list. The condition that comes the closest to a search provision states that the probationer must "permit the court services officer or community correctional services officer to visit the defendant [probationer] at home or elsewhere." K.S.A. 21-4610(c)(4). This is in keeping with the *Freeman* court's statement that Kansas has not gone as far as California in authorizing probationer/parolee searches. See 479 F.3d at 748.

If parolees have fewer rights than probationers following the *Uhlig* continuum, then probationer searches in Kansas should generally be supported by reasonable suspicion. If Kansas statutes provided for suspicionless searches as does California statutory law, perhaps the result reached could arguably be different. However, the condition of probation imposed in this case is unconstitutional and unenforceable. The district court's order of probation which included a condition subjecting the defendant to nonconsensual, suspicionless searches by community corrections or law enforcement officers is reversed.

Reversed and remanded with directions to the district court to vacate the challenged condition of probation.