(206 P.3d 22)

No. 99,445

STATE OF KANSAS, *Appellee*, v. LEROY SCHAD, *Appellant*.

Opinion filed April 24, 2009.

*Carl Folsom, III*, of Kansas Appellate Defender Office, for appellant.

*Joe Shepack*, county attorney, and *Stephen N. Six*, attorney general, for appellee.

Before GREENE, P.J., GREEN and LEBEN, JJ.

GREEN, J.: After pleading no contest to one count of aggravated indecent solicitation of a child in violation of K.S.A. 21-3511, Leroy Schad was placed on 60 months' probation. The trial court imposed several probation conditions that included placing him under house arrest, forbidding him from grocery shopping, and ordering him to place sexual offender signs around his house and on his car. On appeal, Schad raises arguments relating to his probation conditions, the term of his probation, and the term of his underlying prison sentence. The State contends, however, that this court lacks jurisdiction to decide Schad's arguments under K.S.A. 21-4704b(f). We

disagree with the State's contention and find that we have jurisdiction to address Schad's arguments.

First, Schad argues that the probation conditions requiring him to post signs around his house and on his car were invalid because they violated his right to privacy and his right against cruel and unusual punishment and because the trial court did not have the authority to impose the conditions. Nevertheless, when a valid alternative ground for relief exists, an appellate court need not reach the constitutional contentions of the parties. Because we reverse and remand to the trial court to sever these conditions from the order of probation on the basis that they violate our statutory scheme, it is unnecessary for us to address the constitutional law contentions.

Next, Schad contends that the trial court lacked the statutory authority to order Schad to serve 60 months of probation. We disagree. Next, Schad maintains that the trial court failed to make the necessary findings to increase his term of probation to 60 months. We agree. As a result, we remand to the trial court to determine whether there were substantial and compelling reasons to impose the 60-month term of probation. If there were not substantial and compelling reasons for the 60-month term of probation, the trial court is limited to imposing the recommended 36-month term of probation under K.S.A. 21-4611(c)(1). Next, Schad argues that the trial court erred in prohibiting him from grocery shopping as a condition of his probation. We determine that under K.S.A. 21-4603b(d), the trial court could not impose a probation condition that constituted a deprivation of an essential activity. The trial court in this case never made the necessary inquiry and appropriate findings as to whether Schad was able to obtain food by other means. As a result, we remand the case with instructions that the probation condition prohibiting Schad from grocery shopping should be severed from the order of probation unless it can be shown on rehearing that grocery shopping was not an essential activity.

Finally, Schad contends that the trial court violated his constitutional rights in sentencing him to the aggravated number in the sentencing grid box. Nevertheless, because our Supreme Court recently rejected this same argument in *State v. Johnson*, 286 Kan.

824, 190 P.3d 207 (2008), Schad's argument fails. Accordingly, we affirm Schad's underlying prison sentence and remand the case with instructions to sever the probation conditions requiring Schad to post signs around his house and on his car and with additional instructions concerning Schad's 60-month term of probation and the probation condition pertaining to grocery shopping.

Schad was originally charged with one count of rape and three counts of aggravated indecent liberties with a child. The charges were based upon allegations that Schad had bathed separately with each of his grandchildren, a 9-year-old female and an 11-year-old male, while they were staying overnight at his house and had touched their genitals during and following the baths. Schad admitted to officers that the touching had occurred after the baths but stated that the touching had occurred over his grandchildren's clothing and that the touching of his granddaughter had been accidental.

In exchange for Schad's no contest plea, the State amended the complaint to charge only one count of aggravated indecent solicitation of a child. At the plea hearing, the State proffered the preliminary hearing transcript and stated that the transcript would show that on the date in question, Schad invited or persuaded a child under the age of 14 to come up to "one of the bedrooms or bathrooms in house and then and there take a bath" with him.

Based on his criminal history, Schad fell within 5-I, which was a border box, on the Kansas Sentencing Guidelines Acts grid, K.S.A. 21-4704b. As a result, Schad's conviction of aggravated indecent solicitation of a child carried a presumptive sentence of 31 to 34 months' imprisonment. Before sentencing, Schad moved the trial court to make appropriate border box findings to allow him to receive probation. The trial court sentenced Schad to an underlying sentence of 34 months in prison but granted Schad's motion for probation. The trial court found that there was little chance of recidivism and that there was appropriate treatment available. The trial court ordered Schad to serve 60 months of probation. As part of the conditions of his probation, the trial court placed Schad under house arrest for the entire duration of his probation. The trial court allowed Schad to leave his home to meet with his pro-

bation officer, to participate in a sexual offender treatment program, and to drive to medical appointments.

Nevertheless, determining that Schad would not be allowed to leave his home for any other reason, the trial judge stated:

"You're going to have to figure out how to get food to your house though. Cause I'm not going to let you go get groceries. I'm not going to let you go get anything. You will have to find somebody else to do that. Basically you're going to be in prison in your house."

The trial court also ordered Schad to place signs, with letters at least 4 inches tall, stating that a "sexual predator lives here" on all four sides of his property. Moreover, the trial court ordered Schad to put stickers similar to what "campaign people" use on both sides of his car that state "sexual predator." The trial court further ordered Schad not to have contact with any children under the age of 16, including his grandchildren.

After Schad filed his notice of appeal in this case, the State moved to revoke Schad's probation for failure to comply with the conditions of his probation. The State maintained that Schad had failed to contact the appropriate program to set up his house arrest and that he had not affixed the ordered signs on his property and on his car. Schad moved to advance the case for an immediate hearing on the State's allegation of a probation violation. Schad also moved the trial court to reconsider its probation order relating to the wording on the ordered signs. In addition, Schad asked the trial court to allow him a reasonable time to find out whether his family would be able to assist him with the costs of the house arrest program. Schad requested that if no financial help could be arranged, that the trial court reconsider whether ordering him to pay the cost of the house arrest program constituted cruel and unusual punishment. Attached to Schad's motion for reconsideration was an affidavit from Schad outlining his concerns about the probation conditions.

After holding a nonevidentiary hearing, the trial court granted the State's motion to revoke Schad's probation. The trial court modified the language in its earlier order and required Schad to place signs on his property stating that a "Sex Offender Lives Here"

(instead of "sexual predator lives here") and on his car stating that "Sex Offender In This Car" (instead of "sexual predator"). In addition, the trial court reinstated Schad's probation with a few new conditions. The trial court imposed a new 5-year term of probation. Moreover, the trial court specified the dates by which Schad was required to comply with the probation conditions.

*Jurisdiction*

On appeal, Schad raises arguments relating to the constitutionality of his probation conditions, the trial court's authority to impose the probation conditions, the trial court's authority to increase the term of his probation, and the constitutionality of his underlying prison sentence. In its appellate brief, the State does not address the merits of Schad's arguments. Instead, the only argument advanced by the State is that there is no statutory authority for this court to hear a direct appeal of Schad's sentence. Therefore, the State contends that this court must dismiss Schad's appeal for lack of jurisdiction.

Whether jurisdiction exists is a question of law over which an appellate court's scope of review is unlimited. *State v. Denney*, 283 Kan. 781, 787, 156 P.3d 1275 (2007). It is well established that the right to appeal is entirely statutory and is not contained in the United States or Kansas Constitutions. Subject to certain exceptions, Kansas appellate courts have jurisdiction to entertain an appeal only if the appeal is taken in the manner prescribed by statute. *State v. Legero*, 278 Kan. 109, 111, 91 P.3d 1216 (2004).

Moreover, the State's argument requires interpretation of K.S.A. 21-4704b(f). The interpretation of a statute presents a question of law over which an appellate court has unlimited review. *State v. Storey*, 286 Kan. 7, 9-10, 179 P.3d 1137 (2008).

K.S.A. 21-4704b(f) specifies that the imposition of an optional nonprison sentence of an offense classified in grid blocks 5-H, 5-I, or 6-G is not considered a departure and is not subject to appeal:

"If an offense is classified in grid blocks 5-H, 5-I, or 6-G, the court may impose an optional nonprison sentence upon making the following findings on the record:

"(1) An appropriate treatment program exists which is likely to be more effective than the presumptive prison term in reducing the risk of offender recidivism; and

"(2) The recommended treatment program is available and the offender can be admitted to such program within a reasonable period of time; or

"(3) The nonprison sanction will serve community safety interests by promoting offender reformation.

"Any decision made by the court regarding the imposition of an optional non-prison sentence if the offense is classified in grid blocks 5-H, 5-I or 6-G shall not be considered a departure and shall not be subject to appeal."

Here, the trial court imposed an optional nonprison sentence for Schad's offense that was classified in grid block 5-I. Thus, under K.S.A. 21-4704b(f), the decision of the trial court regarding the imposition of an optional nonprison sentence for Schad is not considered a departure and is not subject to appeal.

Nevertheless, Schad correctly points out that this court has previously held that the constitutionality of a probation condition is subject to appellate review. Specifically, in *State v. Spencer*, 31 Kan. App. 2d 681, 683, 70 P.3d 1226, *rev. denied* 276 Kan. 973 (2003), this court stated:

"It is true that we have no jurisdiction to consider an appeal from a presumptive sentence, K.S.A. 21-4721(c)(1); *State v. Flores*, 268 Kan. 657, 659, 999 P.2d 919 (2000), but the issue raised relates to a constitutional violation in determining the terms and conditions of the probation granted."

Citing *Spencer*, this court in *State v. Bennett*, 39 Kan. App. 2d 890, 891, 185 P.3d 320 (2008), *aff'd* 288 Kan. 86, 200 P.3d 455 (2009), noted that this court has allowed an appeal from a presumptive sentence when the appeal challenged an imposed condition of probation. This court noted that "[g]enerally, conditions of probation are not per se presumptive, and such conditions are a matter within the discretion of the sentencing court. See K.S.A. 21-4610(c); *Spencer*, 31 Kan. App. 2d at 683." *Bennett,* 39 Kan. App. 2d at 891. Therefore, this court rejected the State's argument that it lacked jurisdiction to consider the appellant's argument that a condition of his probation was unconstitutional. 39 Kan. App. 2d at 891. On appeal to our Supreme Court, the State did not make the same jurisdictional argument. Our Supreme Court, however, did address the merits of the appellant's argument concerning the constitutionality of his probation condition. See *Bennett*, 288 Kan. at 90-99.

Moreover, Schad maintains that this court may address his arguments concerning the trial court's authority to impose a probation condition, to increase his term of probation to 60 months, and to impose the aggravated number in the grid box for his underlying prison sentence under K.S.A. 22-3504. K.S.A. 22-3504(1) provides that courts may correct an illegal sentence at any time. An illegal sentence, as contemplated by K.S.A. 22-3504, is a sentence "imposed by a court without jurisdiction; one that does not conform to the statutory provisions, either in the character or the term of the punishment authorized; or one that is ambiguous with respect to the time and manner in which it is to be served. [Citations omitted.]" *State v. Jones*, 279 Kan. 809, 810, 112 P.3d 123 (2005).

Most of Schad's arguments relate to whether his sentence conformed "to the statutory provisions, either in the character or the term of the punishment authorized." As a result, this court can address those arguments and determine whether Schad's sentence was illegal. Moreover, based on the previous decisions by this court, we have jurisdiction to address Schad's constitutional challenges to the terms and conditions of his probation.

Finally, K.S.A. 21-4704b(f) states that "[*a*]*ny decision made by the court regarding the imposition of an optional nonprison sentence* if the offense is classified in grid blocks 5-H, 5-I or 6-G *shall not be considered a departure and shall not be subject to appeal.*" (Emphasis added.) While K.S.A. 21-4704b(f) does not allow an appeal from a trial court's decision regarding the imposition of a nonprison sentence, the statute says nothing about the individual conditions of probation ordered by the trial court.

Generally, criminal statutes must be strictly construed in favor of the defendant. Any reasonable doubt as to the meaning of the statute is decided in favor of the defendant. This rule of strict construction is subordinate to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent. *State v. Paul*, 285 Kan. 658, 662, 175 P.3d 840 (2008). Under the rule of lenity, where the intention of the legislature is unclear from the act itself and reasonable minds might differ as to its intention, a court will adopt the less harsh meaning. See Black's Law Dictionary 1359 (8th ed. 2004). The rule of lenity is applied

broadly to statutes that create penalties. See *State v. Edwards*, 39 Kan. App. 2d 300, 303, 179 P.3d 472, *rev. denied* 286 Kan. 1181 (2008).

K.S.A. 21-4704b is a penalty statute in that it defines the punishments for nondrug felony crimes. Therefore, we apply the rule of lenity if there is any reasonable doubt as to the meaning of the provisions of K.S.A. 21-4704b. Because K.S.A. 21-4704b(f) is silent about the individual conditions of probation ordered by the trial court, we determine that the statute does not prohibit a defendant from appealing those conditions to this court. As discussed previously, conditions of probation are not per se presumptive and are a matter within the discretion of the sentencing court. See *Bennett*, 39 Kan. App. 2d at 891. Therefore, it is apparent that K.S.A. 21-4704b(f) does not cut off Schad's right to challenge the conditions of his probation, and this court can address Schad's arguments relating to those conditions.

*Issues Not Raised to the Trial Court*

Before we proceed to the merits of Schad's arguments, we point out that Schad failed to object to the signage conditions on this basis at the trial court level. Generally, issues not raised before the trial court cannot be raised on appeal. *State v. Williams*, 275 Kan. 284, 288, 64 P.3d 353 (2003).

Nevertheless, there are several exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal, including the following: (1) that the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) that consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) that the judgment of the trial court may be upheld on appeal despite its reliance on the wrong ground or assignment of a wrong reason for its decision. *State v. Hawkins*, 285 Kan. 842, 845, 176 P.3d 174 (2008). We will address Schad's arguments under the first exception because the issues involve purely legal questions. See *State v. Poulton*, 286 Kan. 1, 5, 179 P.3d 1145 (2008).

*Signage Conditions*

On appeal, Schad first challenges the constitutionality of the conditions of probation requiring him to post the signs around his house and on his car letting the public know that he is a sex offender. Schad raises two constitutional arguments: (1) that the probation conditions impermissibly restricted his right to privacy without bearing a reasonable relationship to the rehabilitative goals of probation, the protection of the public, and the nature of the offense; and (2) that the probation conditions constituted cruel and unusual punishment.

In support of his argument, Schad cites several cases where appellate courts have applied a statutory scheme in determining whether a trial court had the authority to order these types of conditions. See *People v. Meyer*, 176 Ill. 2d 372, 680 N.E.2d 315 (1997); *State v. Muhammad*, 309 Mont. 1, 43 P.3d 31 (2002); *State v. Burdin*, 924 S.W.2d 82 (Tenn. 1996). Nevertheless, we do not need to reach Schad's constitutional arguments because we can consider whether the trial court had the statutory authority to impose the signage conditions.

The United States Supreme Court has stated that "if a case may be decided on either statutory or constitutional grounds, [a court], for sound jurisprudential reasons, will inquire first into the statutory question." *Harris v. McRae*, 448 U.S. 297, 306-07, 65 L. Ed. 2d 784, 100 S. Ct. 2671 (1985). This practice is based on the deeply rooted doctrine that a court "ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable." *Spector Motor Co. v. McLaughlin*, 323 U.S. 101, 105, 89 L. Ed. 101, 65 S. Ct. 152 (1944); see also *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 11, 159 L. Ed. 2d 98, 124 S. Ct. 2301 (2004) ("Always we must balance 'the heavy obligation to exercise jurisdiction,' [citation omitted] against the 'deeply rooted "commitment" not to pass on questions of constitutionality' unless adjudication of the constitutional issue is necessary. [Citations omitted.]"); *Gay Rights Coalition v. Georgetown Univ.*, 536 A.2d 1, 16 (D.C. 1987); *Caron v. Town of North Smithfield*, 885 A.2d 1163, 1165 (R.I. 2005) ("[T]his court has on many occasions held that it

will not decide a case on constitutional grounds if it otherwise can be decided."). In this case, where there is a valid alternative statutory ground for relief, we need not reach Schad's constitutional assertions.

Turning now to the merits of this issue, we note that the probation condition in *Burdin* is very similar to the probation condition requiring Schad to post signs around his house. Specifically, in *Burdin*, the trial court required the defendant to erect a 4-foot by 8-foot sign, stating: "Warning, all children. [Defendant] is an admitted and convicted child molester. Parents beware," as a condition of his probation. 924 S.W.2d at 84. The defendant argued that the probation condition was not authorized by the sentencing act effective in that state. On the other hand, the State argued that the condition was authorized under the sentencing act and that it was reasonably related to the purpose of the defendant's sentence.

In addressing the parties' arguments, the Tennessee Supreme Court looked to the statutes setting forth the principles of sentencing and the trial court's authority to impose probation conditions. The court noted that the enumerated probation conditions in the statute relating to the trial court's authority to impose probation conditions were closely related to societal duties, focused on the offender and the people charged with the offender's supervision, and offered no dramatic departures from the traditional principles of rehabilitation. The court stated that the primary goal of probation, under the sentencing act and the decisions of its appellate courts, was rehabilitation of the defendant. 924 S.W.2d at 86.

The Tennessee Supreme Court rejected the State's argument that the trial court had the authority to impose the probation condition under the section of the statute allowing the trial court to order a defendant to "[s]atisfy any other conditions reasonably related to the purpose of the offender's sentence and not unduly restrictive of the offender's liberty, or incompatible with the offender's freedom of conscience or otherwise prohibited by this chapter." 924 S.W.2d at 85. Determining that the subsection did not give the trial court unlimited discretion to impose conditions of probation, the Tennessee Supreme Court stated:

"[The subsection] cannot be read as granting unfettered authority to the courts to impose punishments which are beyond the bounds of traditional notions of rehabilitation. The consequences of imposing such a condition without the normal safeguards of legislative study and debate are uncertain. Posting the sign in the defendant's yard would dramatically affect persons other than the defendant and those charged with his supervision. In addition to being novel and somewhat bizarre, compliance with the condition would have consequences in the community, perhaps beneficial, perhaps detrimental, but in any event unforeseen and unpredictable. Though innovative techniques of probation are encouraged to promote the rehabilitation of offenders and the prevention of recidivism, this legislative grant of authority may not be used to usurp the legislative role of defining the nature of punishment which may be imposed. The power to define what shall constitute a criminal offense and to assess punishment for a particular crime is vested in the legislature. [Citations omitted.]" 924 S.W.2d at 87.

The Tennessee Supreme Court found that the probation condition was not expressly *or implicitly* authorized by the sentencing act. 924 S.W.2d at 87.

Similarly, appellate courts in other states have declared probation conditions requiring defendants to post signs around their houses or on their car to be invalid. In *Muhammad,* 309 Mont. at 3, the trial court imposed a probation condition requiring the defendant to post signs at each entrance of his residence, stating: "CHILDREN UNDER THE AGE OF 18 ARE NOT ALLOWED BY COURT ORDER." The defendant argued that the condition exceeded statutory parameters regarding the dissemination of information concerning sexual offenders. In addressing the defendant's argument, the Montana Supreme Court looked to a Mont. statute, Code Ann. § 46-18-202(1)(e) (1997), which provided that "the sentencing judge may impose any condition 'reasonably related to the objectives of rehabilitation and the protection of the victim and society.'" 309 Mont. at 11. The Montana Supreme Court noted that the majority of jurisdictions that had examined probation conditions requiring the placement of signs on defendants' property had concluded that such conditions were not reasonably related to the goals of rehabilitation and the protection of society. 309 Mont. at 11.

In agreeing with the majority of jurisdictions that such signage conditions exceeded express or implicit statutory authority, the Montana Supreme Court stated:

"We agree with the majority of jurisdictions holding that the imposition of such conditions exceeds express or implicit statutory authority granted to trial courts, as the requirement is not reasonably related to serve the goals of rehabilitation and the protection of the victim and society. Therefore, we conclude that the condition requiring the placement of signs at every entrance of Muhammad's residence violates § 46-18-202(1)(e), MCA (1997). This condition, as is the banishment condition, is unduly severe and punitive to the point of being unrelated to rehabilitation. As noted by other jurisdictions, the effect of such a scarlet letter condition tends to over-shadow any possible rehabilitative potential that it may generate. Moreover, the District Court imposed less restrictive means to rehabilitate Muhammad and to protect the victim and society, such as requiring that he obtain sexual offender treatment, have no contact with the victim or her family and register as a sexual offender and as a violent offender, which permits the agency that Muhammad is registered with to disseminate his name to the public with the notation that he is a sexual offender." 309 Mont. at 12.

The Montana Supreme Court vacated the signage condition based upon its determination that the condition was not reasonably related to the goals of rehabilitation and the protection of the victim and society in violation of the statute. 309 Mont. at 12.

In *Meyer*, 176 Ill. 2d at 373, the Illinois Supreme Court determined that a probation condition requiring the defendant to erect a sign that said: "Warning! A Violent Felon lives here. Enter at your own Risk!" was unreasonable and not authorized by its Corrections Code. Under Section 5-6-3(b) of the Illinois Unified Code of Corrections, 730 ILCS 575-6-3(b) (West 1994) the trial court was authorized to impose 16 permitted conditions of probation " 'in addition to other *reasonable* conditions.' " 176 Ill. 2d at 377, 378. The State argued that the signage condition was a reasonable condition of probation because it was consistent with the permissible conditions listed in section 5-6-3(b) and furthered the goals of probation.

In rejecting the State's argument, the Illinois Supreme Court stated:

"We hold that section 5-6-3(b) of the Code did not authorize the trial court to require the sign as a condition of the defendant's probation. The sign contains a strong element of public humiliation or ridicule because it serves as a formal, public announcement of the defendant's crime. Thus, the sign is inconsistent with the conditions of probation listed in section 5-6-3(b), none of which identify public notification or humiliation as a permissible condition. Further, we determine that

the sign may have unpredictable or unintended consequences which may be inconsistent with the rehabilitative purpose of probation." 176 Ill. 2d at 382.

The Illinois Supreme Court further noted that the nature and location of the sign were likely to have an adverse effect on innocent individuals who might reside with the defendant. 176 Ill. 2d at 382. Determining that the signage condition was unreasonable under its corrections code, the Illinois Supreme Court stated:

"The judicially developed condition in the case at bar does not reflect present penological policies of this state as evidenced by our Unified Code of Corrections. The authority to define and fix punishment is a matter for the legislature. [Citation omitted.] The drastic departure from traditional sentencing concepts utilized in this case is not contemplated by our Code. Therefore, we determine that the erection of the sign as a condition of probation was unreasonable, and may be counterproductive to defendant's rehabilitative potential." 176 Ill. 2d at 383.

As a result, the Illinois Supreme Court vacated the signage condition. 176 Ill. 2d at 383; see also *People v. Letterlough*, 86 N.Y.2d 259, 631 N.Y.S.2d 105, 655 N.E.2d 146 (1995) (probation condition requiring defendant to affix florescent sign that stated " 'convicted dwi' " to the license plate of any vehicle he drove declared invalid; condition could not be regarded as rehabilitative measure authorized by statute).

Like the particular statutes in *Burdin* and *Meyer*, K.S.A. 21-4610(c) sets out the conditions of probation that a trial court is authorized to impose. Under K.S.A. 21-4610(c), there are 14 nonexclusive probation conditions that a trial court may impose. As in *Burdin*, most of the enumerated conditions in K.S.A. 21-4610(c) are closely related to conventional societal duties—productive, suitable employment; support of dependents; establishment of a residence within the community; participation in educational and rehabilitative programs; cooperation with supervising agencies; avoidance of injurious or vicious habits; avoidance of persons or places of disreputable or harmful character; community or public service work; and restitution.

The enumerated conditions in K.S.A. 21-4610(c) reflect the legislature's intent that the main goal of probation is rehabilitation. Our Supreme Court has stated that "[t]he primary purpose of probation is the successful rehabilitation of the offender. Toward that

end courts are authorized to impose conditions and restrictions on the probationer's liberty to afford the probationer a setting conducive to the rehabilitative process. [Citation omitted.]" *State v. Turner*, 257 Kan. 19, 24, 891 P.2d 317 (1995). Quoting *State v. Dubish*, 236 Kan. 848, 853-54, 696 P.2d 969 (1985), our Supreme Court further outlined the nature of probation as follows:

" 'The basic purpose for probation is to provide a program whereby an individual is given the opportunity to rehabilitate himself without institutional confinement under the supervision of a probation official and under the continuing power of the district court to impose institutional punishment for the original offense if the probationer abuses this opportunity. It permits the sentencing judge to give a convicted person the opportunity to mend his ways and his freedom under conditions imposed. Probation is not granted out of a spirit of leniency, but is granted as a result of the evaluation of the characteristics of the offender and a determination that the offender may respond best to supervised control within the community and that public safety will not be endangered. On the other hand, confinement is for individuals who are required to be isolated from the community in order to protect society or to provide a closely controlled environment for individuals who can learn to adjust their attitude or behavior for later release into the community.' " *Turner*, 257 Kan. at 24.

See also *Roberts v. United States*, 320 U.S. 264, 272, 88 L. Ed. 41, 64 S. Ct. 113 (1943) (The basic purpose of probation is to provide an individualized program offering young or unhardened offenders an opportunity to rehabilitate themselves without institutional confinement under the tutelage of probation officials and under the continuing power of the court to impose institutional punishment for their original offense if they abuse the opportunity.).

In his appellate brief, Schad cites part of the above language from *Dubish* and *Turner* and argues that the conditions of probation did not give him the opportunity to rehabilitate himself.

Here, in placing Schad on probation, the trial court declared that there was "little chance of recidivism." This was supported by the psychological evaluation report, which stated that Schad was not "a public risk." In the psychological evaluation report, Schad was described as "an aging person showing poor judgment in the face of mitigating circumstances." The trial court's stated reason for ordering the probation conditions requiring Schad to post signs around his house and on his car declaring his sex offender status

was to protect people who were new to the community and might not know that Schad was a convicted sex offender. The trial court never pronounced a rehabilitative goal for imposing those probation conditions.

Moreover, a review of the record in this case fails to show how those probation conditions would fit within the bounds of rehabilitating Schad. To the contrary, the conditions would actually deter Schad's rehabilitation as they would make it nearly impossible for Schad to assimilate himself within the community. Everywhere Schad would go, he would be explicitly identified as a sexual offender. The probation conditions requiring Schad to post signs on his property and on his car represented the criminal act that he had committed and was a badge of shame for all to see. As noted by other jurisdictions, "the effect of such a scarlet letter condition tends to over-shadow any possible rehabilitative potential that it may generate." *Muhammad*, 309 Mont. at 12.

Indeed, the signage conditions in the present case are reminiscent of *Branded*, a television Western series which aired on NBC from 1965 through 1966. The series starred Chuck Connors as Jason McCord, a United States Army captain who had been court-martialed for cowardice and forced to leave the Army. Some of the lyrics of the theme song were as follows:

"Branded!
"Marked with a coward's shame.
"What do you do when you're branded . . . ?"

According to the theme song, "[McCord] was innocent, Not a charge was true." But this did not change how people, as a whole, viewed McCord.

Essentially exiled, McCord traveled the west from job to job, always ready to move on when his current employer would learn about his notorious reputation for cowardice. In the series, McCord, as he traveled throughout the west, suffered unimaginable taunts and deadly threats from people who learned about his reputation. The theme song ends with these telling lyrics:

"And wherever you go
"For the rest of your life

"You must prove
"You're a man!"

In McCord's case, these final lyrics condemned him to a life of wandering and trying to prove to others that he was not a coward. Indeed, the lyrics expressed a very harsh and unforgiving censure against McCord for his alleged cowardice.

Similarly, in the present case, the signage conditions exact a very harsh censure against Schad. Although Schad had been convicted of a sexual offense, the imposed signage conditions would work against any rehabilitation while on probation because wherever Schad would be, he would be "branded." The signage conditions would not be helpful in restoring Schad to the ranks of society's productive citizens.

Further, despite the trial court's ruling, the conditions are not reasonably related to the protection of the public. The trial judge noted that everyone in the small town where Schad lives knows about his sex offender status. The trial judge's concern was with people new to the community.

Nevertheless, the population of Hudson, Kansas, and the number of housing units within the town, which are listed in the 2000 United States Census, are 133 people and 68 housing units, respectively. In taking judicial notice of this fact under K.S.A. 60-412(c), we have afforded both Schad and the State reasonable opportunity to respond to the taking of such judicial notice in compliance with K.S.A. 60-412(d). There being no objection by the parties, we have taken judicial notice of the 2000 United States Census results relating to Hudson, Kansas.

With such a small population in Hudson, the town where Schad resides, it is unclear how anyone moving into the town would not swiftly be made aware of Schad's sexual offender status. Because he is a convicted sexual offender, Schad was required to comply with the registration requirements of the Kansas Offender Registration Act (KORA), K.S.A. 22-4901 *et seq.* See K.S.A. 22-4907. The information concerning Schad's sex offender status, his address, the cars he owned, and other pertinent information would be made available to the public through the registration and noti-

fication statutes of the KORA. See K.S.A. 22-4909. Someone moving into the community with small children could access this information either through the Stafford County Sheriff's office or the Internet.

Moreover, the following provisions of K.S.A. 22-4909 mandate notification of schools and licensed child care facilities of the Kansas Bureau of Investigation Internet website and any website containing offender registration information:

"(c) The state department of education shall annually notify any school upon which is located a structure used by a unified school district or an accredited nonpublic school for student instruction or attendance or extracurricular activities of pupils enrolled in kindergarten or any grades one through 12 of the Kansas bureau of investigation internet website and any internet website containing information on the Kansas offender registration sponsored or created by the sheriff of the county in which the school is located for the purposes of locating offenders who reside near such school.

"(d) The secretary of health and environment shall annually notify any licensed child care facility of the Kansas bureau of investigation internet website and any internet website containing information on the Kansas offender registration sponsored or created by the sheriff of the county in which the facility is located for the purposes of locating offenders who reside near such facility.

"(e) Such notification required in subsections (c) and (d) shall include information that the sheriff of the county where such school or child care facility is located is available to the school and child care facilities to assist in using the registry and providing additional information on the registered offenders."

With such widespread dissemination of information concerning sexual offender registration and with the small size of Schad's community, we feel confident that any person moving into the community would quickly be made aware of Schad's sexual offender status.

In addition to the registration and notification requirements of the KORA, the trial court in this case had imposed other conditions to protect the victim and society by ordering Schad to remain under house arrest, to not have contact with the victim or any children under the age of 16, and to attend sexual offender treatment. Because measures to protect the public were already in place, the trial court's order was unduly severe and did not reasonably relate to the protection of the public. See *State v. Scott*, 265 Kan. 1, 9-10, 14-15, 961 P.2d 667 (1998) (recognizing that legislature has

enacted sexual offender registration requirements so that public has opportunity to defend themselves from danger posed by sex offenders).

Under the facts of this case, the probation conditions requiring Schad to post signs around his house and on his car announcing his sex offender status were not reasonably related to the rehabilitative goal of probation or to the protection of the victim and society. In short, probation is not to shield guilty individuals from the consequences of their crimes, but it is an attempt to reform their attitudes about acting out in a criminal way. Here, the signage conditions made Schad an object of condemnation and ridicule. The signage conditions only confirmed society's outrage against Schad. The signage conditions were simply a punitive measure not reasonably related to rehabilitation.

As in *Burdin, Muhammad,* and *Meyer,* the conditions imposed were not expressly or implicitly authorized by K.S.A. 21-4610(c), the statute governing the conditions of probation. Because the trial judge went outside of his authority in ordering the probation conditions requiring Schad to post the signs around his house and on his car, we reverse and remand the case with directions for the trial court to sever the signage conditions from the order of probation.

*Legality of Increased Term of Probation*

Next, Schad maintains that the trial court lacked the statutory authority to order him to serve 60 months of probation. Interpretation of a statute presents a question of law over which an appellate court has unlimited review. *State v. Storey,* 286 Kan. 7, 9-10, 179 P.3d 1137 (2008).

The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Winnebago Tribe of Nebraska v. Kline,* 283 Kan. 64, 77, 150 P.3d 892 (2007). An appellate court's first task is to "ascertain the legislature's intent through the statutory language it employs, giving ordinary words their ordinary meaning." *State v. Stallings,* 284 Kan. 741, 742, 163 P.3d 1232 (2007).

"When a statute is plain and unambiguous, we do not speculate as to the legislative intent behind it and will not read the statute to add something not readily found in it." *In re K.M.H.*, 285 Kan. 53, 79, 169 P.3d 1025 (2007), *cert. denied* 555 U.S. 937 (2008). When construing statutes to determine legislative intent, appellate courts must consider various provisions of an act *in pari materia* with a view of reconciling and bringing the provisions into workable harmony if possible. *State v. Breedlove*, 285 Kan. 1006, 1015, 179 P.3d 1115 (2008).

K.S.A. 21-4611(c), which relates to the duration of probation in felony cases, provides in relevant part as follows:

"For all crimes committed on or after July 1, 1993, the duration of probation in felony cases sentenced for the following severity levels on the sentencing guidelines grid for nondrug crimes and the sentencing guidelines grid for drug crimes is as follows:

"(1) *For nondrug crimes the recommended duration of probations is*:
(A) *Thirty-six months for crimes in crime severity levels 1 through 5;*
. . . .
"(3) In felony cases sentenced at severity levels 9 and 10 on the sentencing guidelines grid for nondrug crimes and severity level 4 on the sentencing guidelines grid for drug crimes, if a nonprison sanction is imposed, the court shall order the defendant to serve a period of probation, or assignment to a community correctional services program as provided under K.S.A. 75-5291 *et seq.*, and amendments thereto, of up to 12 months in length.

"(4) In felony cases sentenced at severity level 8 on the sentencing guidelines grid for nondrug crimes and severity level 3 on the sentencing guidelines grid for drug crimes, if a nonprison sanction is imposed, the court shall order the defendant to serve a period of probation, or assignment to a community correctional services program, as provided under K.S.A. 75-5291 *et seq.*, and amendments thereto, of up to 18 months in length.

"(5) If the court finds and sets forth with particularity the reasons for finding that the safety of the members of the public will be jeopardized or that the welfare of the inmate will not be served by the length of the probation terms provided in subsection (c)(3) and (c)(4), the court may impose a longer period of probation. Such an increase shall not be considered a departure and shall not be subject to appeal.

"(6) Except as provided in subsections (c)(7) and (c)(8), *the total period in all cases shall not exceed 60 months, or the maximum period of the prison sentence that could be imposed whichever is longer*. Nonprison sentences may be terminated by the court at any time." (Emphasis added.)

Subsections (c)(7) and (c)(8) of K.S.A. 21-4611 are inapplicable to the present case as they relate to a conviction for nonsupport of a child and the modification and extension of an offender's period of supervision, respectively.

Here, the recommended term of probation for Schad's crime of conviction was 36 months under K.S.A. 21-4611(c)(1)(A). Essentially, Schad maintains that because his crime of conviction does not come within subsection (c)(5) of K.S.A. 21-4611, there is no authority for the trial court to increase his probation term to 60 months. Nevertheless, subsection (c)(5) of K.S.A. 21-4611 limits only the trial court's authority to increase the length of probation for those crimes of conviction *covered by subsections (c)(3) and (c)(4)* to those cases where the trial court has made certain findings regarding the safety of the public and the welfare of the defendant. It does not limit the trial court's authority to increase the term of probation for crimes covered under K.S.A. 21-4611(c)(1) and (c)(2).

By its use of the phrase "recommended" term of probation in K.S.A. 21-4611(c)(1), the legislature implicitly recognizes that the trial court may increase a defendant's probation term for a crime covered by that section. K.S.A. 21-4611(c)(6) provides that with the exceptions of subsections (c)(7) and (c)(8), the total period in all cases cannot exceed the longer of 60 months or the maximum period of the prison sentence that could be imposed.

Citing *State v. Whitesell*, 270 Kan. 259, 292-93, 13 P.3d 887 (2000), this court in *State v. Gordon*, 30 Kan. App. 2d 852, 857, 50 P.3d 100 (2002), *rev'd on other grounds* 275 Kan. 393, 66 P.3d 903 (2003), recognized that a trial court may impose a greater period of probation than the recommended terms identified by K.S.A. 21-4611(c)(1) and (c)(2). This court noted, however, that such a deviation is considered a departure requiring the trial court to state on the record substantial and compelling reasons to deviate from the recommended term. 30 Kan. App. 2d at 857.

In *Whitesell*, the appellant argued that the trial court erred in sentencing him to 60 months of probation instead of the presumptive guidelines sentence of 24 months of probation under K.S.A. 21-3438(a). Our Supreme Court also pointed to K.S.A. 1999 Supp.

21-4611(c)(1), which outlined a recommended sentence of 24 months of probation for the appellant's crime of conviction. Our Supreme Court recognized that under K.S.A. 1999 Supp. 21-4716, a trial court has the authority to impose a departure sentence when the court states on the record substantial and compelling reasons for the departure at the time of sentencing. 270 Kan. at 292-93.

Under both *Whitesell* and *Gordon*, a defendant's term of probation is not limited to the recommended term outlined in K.S.A. 21-4611(c)(1) and (c)(2). The trial court has the authority to increase the term to the longer of 60 months or the maximum period of the prison sentence that could be imposed, provided that certain findings are made on the record. See K.S.A. 21-4611(c)(6) and K.S.A. 21-4716. As a result, Schad's argument that the trial court could not increase his term of probation beyond the recommended term of 36 months in K.S.A. 21-4611(c)(1)(A) fails.

*Necessary Findings for Increased Term of Probation*

Alternatively to the previous issue, Schad contends that the trial court failed to make the necessary findings to increase his term of probation to 60 months. Schad's argument on this issue requires interpretation of statutes. The interpretation of a statute presents a question of law over which an appellate court has unlimited review. *Storey*, 286 Kan. at 9-10.

To support his argument on this issue, Schad cites to K.S.A. 21-4611(c)(5), which states as follows:

"If the court finds and sets forth with particularity the reasons for finding that the safety of the members of the public will be jeopardized or that the welfare of the inmate will not be served by the length of the probation terms provided in subsections (c)(3) and (c)(4), the court may impose a longer period of probation. Such an increase shall not be considered a departure and shall not be subject to appeal."

By its plain and unambiguous language, K.S.A. 21-4611(c)(5) applies only to those crimes covered by subsections (c)(3) and (c)(4) of that statute. As set forth in the previous issue, Schad's crime of conviction does not fit within subsection (c)(3) or (c)(4) of K.S.A. 21-4611. As a result, the findings required under K.S.A. 21-4611(c)(5) are inapplicable to this case.

As discussed in the previous issue, however, this court has recognized that a deviation from the recommended term of subsection (c)(1) of K.S.A. 21-4611 is considered a departure. See *State v. Bost*, 21 Kan. App. 2d 560, 571, 903 P.2d 160 (1995) (recognizing that presumptive nonimprisonment term for severity level 5 crime is 36 months under K.S.A. 1994 Supp. 21-4611[c][1][A]). Such a departure requires the trial court to state on the record substantial and compelling reasons to deviate from the recommended term. *Gordon*, 30 Kan. App. 2d at 857; see *Whitesell*, 270 Kan. at 292-93. Our Supreme Court has defined "substantial and compelling" as follows: "The term 'substantial' refers to something that is real, not imagined; something with substance and not ephemeral. The term 'compelling' implies that the court is forced, by the facts of a case, to leave the status quo or go beyond what is ordinary. [Citation omitted.]" *State v. McKay*, 271 Kan. 725, 728, 26 P.3d 58 (2001).

Here, in granting Schad's motion for probation, the trial judge found that there was "little chance of recidivism" and "appropriate treatment available." The trial judge noted that he was concerned that he did not "make a mistake on that" and ordered Schad to be on 60 months of probation. Recognizing that the probation time for Schad's conviction was listed at 36 months, the trial judge stated:

"So the conditions of your probation are that it's five years of probation. I can do that. Probation time was listed at 36 months, but I'm making a finding that five years of probation under the terms that I'm going to announce. Because I want to make sure that I'm not making a mistake on what I'm doing here. You will be subject to house arrest for those five years."

The only reason given by the trial judge for increasing the recommended 36-month term of probation to 60 months was that he wanted to make sure that he had not made the wrong decision in placing Schad on probation. This finding does not meet the definition of substantial and compelling reasons as outlined in *McKay*. Because the trial court failed to state on the record substantial and compelling reasons for increasing the recommended 36-month term of probation, we remand to the trial court for additional findings on this issue. On remand, "the sentencing court may 'cite

appropriate reasons justifying the imposition of a departure sentence and impose such a sentence' even though it 'fail[ed] to meet the requirements for the imposition of a departure sentence' the first time." *Whitesell*, 270 Kan. at 294. In the event that the trial court finds no substantial and compelling reasons justifying the increased term of probation, the trial court will be limited to imposing the 36-month recommended term of probation under K.S.A. 21-4611(c)(1).

*No Grocery Shopping Probation Condition*

Next, Schad argues that the trial court erroneously prohibited him from grocery shopping as a condition of house arrest. Schad's argument requires interpretation of K.S.A. 21-4603b(d). Interpretation of a statute presents a question of law over which an appellate court has unlimited review. *Storey*, 286 Kan. at 9-10.

When a defendant has been found guilty of a crime, K.S.A. 21-4603d(a)(6) authorizes the trial court to "assign the defendant to a house arrest program pursuant to K.S.A. 21-4603b and amendments thereto." K.S.A. 21-4603b(d) provides a nonexclusive list of the house arrest sanctions that may be imposed:

"House arrest sanctions shall be administered by the court and the secretary of corrections, respectively, through rules and regulations, and may include, but are not limited to, rehabilitative restitution in money or in kind, curfew, revocation or suspension of the driver's license, community service, *deprivation of nonessential activities or privileges*, or other appropriate restraints on the inmate's liberty." (Emphasis added.)

Schad maintains that although the list of house arrest sanctions is nonexclusive, K.S.A. 21-4603b(d) specifically states that "nonessential activities" may be deprived to the individual on house arrest. Schad argues that this language clearly indicates that the legislature did not intend for the sentencing court to be able to deprive a person of essential activities while on house arrest.

When construing statutes to determine legislative intent that is not ascertainable from the plain language, appellate courts may apply the maxim, *expressio unius est exclusio alterius, i.e.,* the inclusion of one thing implies the exclusion of another. Applying this maxim, courts may presume that when the legislature expressly

includes specific items in a statutory list, it intends to exclude any items not expressly included in that list. *In re Tax Application of Lietz Constr. Co.*, 273 Kan. 890, 911, 47 P.3d 1275 (2002).

The above maxim has limited application to this case as the statutory list in K.S.A. 21-4603b(d) is nonexclusive. In *State v. Gunby*, 282 Kan. 39, 52-53, 144 P.3d 647 (2006), our Supreme Court held that the eight material facts set forth in the nonexclusive list of factors in K.S.A. 60-455 were "among the possibilities, not the only possibilities" and "starting points for analysis rather than ending points." 282 Kan. at 53.

In *State v. Favela*, 259 Kan. 215, 911 P.2d 792 (1996), however, our Supreme Court applied the doctrine of *expressio unius est exclusio alterius* to a nonexclusive list of factors in K.S.A. 1994 Supp. 21-4716(b) justifying a departure sentence. There, the appellant argued that his young age should be a mitigating factor justifying a downward departure of his sentence. The appellant reasoned that although a defendant's young age was not listed as a mitigating factor under K.S.A. 1994 Supp. 21-4716(b), it should qualify because one of the aggravating factors under K.S.A. 1994 Supp. 21-4716(b) was the victim's young age. Rejecting the appellant's argument, our Supreme Court stated:

"K.S.A. 1994 Supp. 21-4716(b)(2)(A) specifically lists the victim's young age as an aggravating factor but 21-4716(b)(1) says nothing about the defendant's young age being a mitigating factor. Even though the list of mitigating factors is nonexclusive, the doctrine of *expressio unius est exclusio alterius* applies here, and, thus, the legislature must not have intended for the defendant's young age to be a mitigating factor." 259 Kan. at 235.

Our Supreme Court held that the appellant's young age was not a substantial and compelling reason justifying departure as a matter of law. 259 Kan. at 235.

Similarly, in *State v. Martin*, 279 Kan. 623, Syl. ¶ 2, 112 P.3d 192 (2005), our Supreme Court determined that the legislature, by including the defendant's minor or passive role in crime as a mitigating factor under the statute justifying a departure sentence but not including the defendant's ringleader role as an aggravating factor, did not intend for defendant's ringleader role to be used an aggravating factor. Our Supreme Court recognized that the list of

aggravating factors and mitigating factors was nonexclusive, which suggested a legislative intent to acknowledge the existence of valid unlisted factors. Nevertheless, our Supreme Court concluded: "Valid unlisted factors, however, according to this court's reasoning in *Favela*, do not have counterparts included in a statutory list." *Martin*, 279 Kan. at 628.

Although *Favela* and *Martin* are distinguishable because they dealt with the aggravated and mitigating factors justifying a departure sentence, our Supreme Court's reasoning in those cases has application here. The legislature expressly included the sanction "deprivation of nonessential activities or privileges" but did not include its counterpart in the nonexclusive list under K.S.A. 21-4603b(d). This indicates a legislative intent not to include deprivation of essential activities or privileges as a house arrest sanction under K.S.A. 21-4603b(d). Moreover, although not argued by Schad, such a broad sanction depriving an individual of activities essential to his or her survival would likely be declared unconstitutional under the prohibition against cruel and unusual punishment in the Eighth Amendment to the United States Constitution. Based on a plain reading of the statute, it is clear that the legislature did not intend to give the trial court the authority to deprive an individual of an activity essential to daily living while on house arrest.

The probation condition prohibiting Schad from leaving the house to grocery shop would constitute deprivation of an essential activity unless Schad had other means of providing food for himself. The record in this case indicates that Schad was an elderly man living by himself. There is no evidence in the record showing that Schad had friends or family members living close to him who would be willing to do his grocery shopping. Under such circumstances, grocery shopping would presumably constitute an activity essential to daily living. In the absence of findings that Schad has the ability to obtain food by other others, the no grocery shopping condition cannot be ordered under K.S.A. 21-4603b(d).

Because there is nothing in the record to establish that Schad had other means to obtain food for himself, we remand the case to the trial court for additional findings on this issue. If the trial

court finds that the no grocery shopping condition constituted deprivation of an essential activity, the condition should be severed from the probation order in this case.

*Constitutionality of Underlying Prison Sentence*

Finally, Schad contends that the trial court violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution under *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), when it sentenced him to the aggravated sentence in the appropriate grid box without requiring that the aggravating factors be charged in the complaint, put before a jury, and proved beyond a reasonable doubt.

Our Supreme Court recently rejected this same argument in *State v. Johnson*, 286 Kan. 824, 190 P.3d 207 (2008). Our Supreme Court held that because the Kansas Sentencing Guidelines Act (KSGA) provides the trial court with discretion to impose any sentence within the presumptive range, the prescribed statutory maximum sentence under *Cunningham v. California*, 549 U.S. 270, 166 L. Ed. 2d 856, 127 S. Ct. 856 (2007), is the high number in the applicable sentencing grid box. Therefore, a sentence to any term, including an aggravated term, within the range in a KSGA presumptive grid box does not violate *Cunningham* or *Apprendi*. *Johnson*, 286 Kan. at 851. Moreover, because a sentence that falls within the applicable grid box is a presumptive sentence, appellate courts lack jurisdiction to consider a challenge to such sentence under K.S.A. 21-4721(c)(1). Appellate courts lack jurisdiction even if the sentence is to the longest term in the presumptive grid box for a defendant's convictions. *Johnson*, 286 Kan. at 851-52.

This court is duty bound to follow our Supreme Court precedent in *Johnson*, absent some indication the court is departing from its previous position. *State v. Singleton*, 33 Kan. App. 2d 478, 488, 104 P.3d 424 (2005). As a result, Schad's argument on this issue fails.

*Summary of Disposition*

In summary, we affirm Schad's underlying prison sentence. We remand the case to the trial court with instructions to do the fol-

lowing: (1) The trial court will sever the conditions of probation requiring Schad to post signs around his house and on his car. (2) The trial court will reconsider its order requiring Schad to serve 60 months of probation. It will clarify whether there were substantial and compelling reasons, as outlined in *McKay*, 271 Kan. at 728, to impose the 60-month term of probation. If the answer is yes, it will set out substantial and compelling reasons for deviating from the recommended 36-month term of probation. If the answer is no, it will be limited to imposing the recommended 36-month term of probation. (3) The trial court will reconsider the no grocery shopping condition of probation. It will sever the no grocery shopping condition unless it finds that grocery shopping was a nonessential activity for Schad. In all other respects, the conditions of probation will remain the same.

Affirmed in part, reversed in part, and remanded to the trial court with directions.