**COURT OF APPEALS
DECISION
DATED AND FILED**

**May 12, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2019AP636-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2017CF525

**IN COURT OF APPEALS
DISTRICT II**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

MARKEA L. BROWN,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Kenosha County: BRUCE E. SCHROEDER, Judge. *Affirmed in part; reversed in part and cause remanded with directions.*

Before Neubauer, C.J., Reilly, P.J., and Davis, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Markea L. Brown appeals from a judgment of conviction and an order denying her postconviction motion. She contends that the circuit court imposed invalid conditions on her extended supervision. We agree with Brown that one of the conditions is invalid. Accordingly, we affirm in part, reverse in part, and remand with directions.

¶2    Brown was convicted following a guilty plea to felony retail theft as party to a crime. She was accused of helping to steal $2655.00 worth of merchandise from a store at the Pleasant Prairie Outlet Mall. As part of its sentence, the circuit court imposed the following conditions on Brown's extended supervision: (1) that she not have any contact with the Pleasant Prairie Outlet Mall; and (2) that, upon entering any place that sells goods to the public, she notify management at the service desk that she is on supervision for retail theft.

¶3    Brown filed a postconviction motion asking the circuit court to vacate the two conditions. She argued that the first condition was overly broad and not reasonably related to her rehabilitation. She further argued that the second condition does nothing other than shame and humiliate her. The circuit court denied the motion. This appeal follows.

¶4    On appeal, Brown renews her challenge to the conditions of her extended supervision. A circuit court has "broad discretion in determining conditions necessary for extended supervision." *State v. Miller*, 2005 WI App 114, ¶11, 283 Wis. 2d 465, 701 N.W.2d 47. A court properly imposes its discretion when it imposes conditions that are reasonable and appropriate because they serve "the dual goals of supervision: rehabilitation of the defendant and protection of a state or community interest." *Id.*

¶5 Here, we conclude that the first condition of extended supervision—which ordered Brown not to have any contact with the Pleasant Prairie Outlet Mall—is valid. The condition is narrowly tailored to the physical location of Brown's crime. Moreover, it is reasonably related to Brown's rehabilitation, as it will remove her from the temptation of reoffending there, which, in turn, protects the victim from further theft. Although the mall is admittedly large, this court has upheld restrictions for larger geographical areas. *See* ***State v. Nienhardt***, 196 Wis. 2d 161, 167-69, 537 N.W.2d 123 (Ct. App. 1995) (upholding a condition of probation banishing the defendant from the City of Cedarburg). Accordingly, we are satisfied that the circuit court properly exercised its discretion in imposing the condition.

¶6 We also conclude, however, that the second condition of extended supervision—which required Brown to notify management of any place that sells goods to the public that she is on supervision for retail theft—is invalid. That condition is overly broad and also falls into the category of shaming, which the circuit court appeared to acknowledge at sentencing. The court told Brown that the condition is "going to embarrass you, of course." It continued, noting that society no longer puts people in the stocks "to be embarrassed and humiliated … but [the court] feel[s] that embarrassment does have a valuable place in deterring criminality."[1] We are not persuaded that embarrassing or humiliating defendants

---

[1] In its order on the postconviction motion, the circuit court disavowed the intention of shaming Brown. However, it subsequently doubled down on the idea that shaming is appropriate, writing:

(continued)

with a state-imposed broad public notification requirement promotes their rehabilitation. While the court also stated that it sought to provide all merchants with an opportunity to protect against theft, the State has provided no legal support for the imposition of a requirement that repeat offenders must self-identify as they go about day-to-day life to personally notify any and all individual potential victims of their criminal history.[2] We do not see where such a requirement would start and stop.

¶7 Furthermore, as the State acknowledges in the supplemental briefing we requested, merchants would not be barred from refusing service. Thus, the likely consequence—refusal to serve Brown and the attendant public humiliation with being kicked out of a store when she is not doing anything wrong, would undoubtedly occur. The unlimited condition includes grocery stores and other vendors of essential items. In effect, while presumably unintentional, the condition foreseeably places Brown in the position of being asked to leave and

> I do not share the belief at the core of [Brown's] blanket claim that all such conditions are inappropriate. I think that the case could be made to a thoughtful and reflective audience that some shaming sentences might be more effective, humane and economical than our society's default punishment of locking people in cages like animals in an effort to convince them not to engage in anti-social behavior ….

[2] By contrast, while not controlling, we find compelling the cases Brown points to from other jurisdictions holding that public notification of one's criminal past and broad public self-shaming are not reasonably related to rehabilitation. *See, e.g.*, **State v. Schad**, 41 Kan. App. 2d 805, 206 P.3d 22 (2009) (collecting cases and concluding that requiring probationer to post signs around his house and car announcing his sex offender status was not reasonably related to the rehabilitative goals of probation or protection of society); **People v. Hackler**, 13 Cal. App. 4th 1049, 16 Cal. Rptr. 2d 681 (1993) (court invalided condition that shoplifter wear a court-provided t-shirt whenever he left the house that read: "My record plus two six-packs equals four years" on the front and "I am on felony probation for theft," on the back; given attenuated relationship between crime and required wearing of the t-shirt in public, it was apparent that the true effect was to shame and not rehabilitate).

denied the ability to shop as any and all vendors could reject Brown's request to enter. We understand that Brown has children, and as such the consequences of the condition could impact them as well. Because the condition's breadth and lack of legal support effectively results in an overly broad ban, with consequences (denial of access based solely on Brown's disclosure of her criminal past) that are not reasonably related to rehabilitation or protection of society, it is apparent that public shaming is the second condition's primary effect; thus, we will require it vacated.

¶8 For these reasons, we affirm in part, reverse in part, and remand with directions. On remand, the circuit court shall enter a new judgment omitting the invalid condition.[3]

*By the Court.*—Judgment and order affirmed in part; reversed in part and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20).

---

[3] In its brief, the State asks that a new judgment be entered to correct a clerical error regarding the length of Brown's initial confinement. There is no clerical error to correct. Although the circuit court initially imposed a term of eighteen months of initial confinement, it subsequently changed it to fifteen months, which is what the judgment of conviction reflects. As the court explained at the end of sentencing, "You know, I'm looking at it now, and I realize this is a maximum sentence, and given [Brown's] decision to plead guilty, I don't think that I want to do that, so that initial confinement period is going to be changed to 15 months."